DOROTHY BATES, Plaintiff, *v.* SELECT LAKE CITY THEATER OPERATING CO., INC., Defendant and Third-Party Plaintiff-Appellant.—(THE WIZ COMPANY *et al.*, Third-Party Defendants-Appellees.)

First District (3rd Division)    No. 79-279

Opinion filed October 24, 1979.

Purcell & Wardrope, Chartered, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Goldenson, Kiesler, Berman & Brenner, of Chicago (Marvin D. Berman and Robert L. Kiesler, of counsel), for appellees.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

Plaintiff Bates, a patron of the Shubert Theater, was injured when she

slipped and fell on an icy stair as she was leaving the theater. She sued the theater operator (theater), which sought to shift liability by way of a third-party complaint to the producers (producers) of the show being performed. The theater relies in its third-party action on an indemnity clause in the licensing agreement between the theater and the producers governing the presentation of the performances at the Shubert.

The licensing agreement provided most of the details for the production of a modern legitimate musical show in the theater, for the apportionment of costs and for the division of receipts. Among its provisions were the following:

"(a) During the engagement Producer shall carry and pay for [workmen's compensation], Public Liability (Personal Injury and Property Damage) Insurance, and [fire insurance] of all scenery, costumes, electrical and sound equipment, literary and musical material, and all other properties and materials owned, rented or brought into Theatre by Producer. * * * All liability policies shall name Theatre as an insured. * * * Upon the failure of Producer to carry and pay for such insurance, Theatre shall have the right, but not the obligation, to take out and pay for the same and charge Producer for all expenses incurred thereby.

(b) Notwithstanding anything contained in subparagraph (a) hereof, Producer agrees to release, indemnify and/or hold Theatre safe and harmless with respect to any claim or demand for any loss, damage and/or injury to any property, person, or thing owned, rented or brought into Theatre by Producer."

The theater was given exclusive control over the sale of tickets and admission to the performances. A separate provision of the licensing agreement required the producers to accept the Shubert Theater "as is." They were not allowed to make any alterations to or repairs of the physical premises.

The third-party complaint by the theater against the producers alleged, in one count, a breach of the agreement to buy liability insurance and requested indemnity as relief, and, in the second count, a breach of the indemnity agreement itself. The circuit court granted summary judgment in favor of the producers on both counts. The only issues raised by the theater's appeal are the construction of the indemnity agreement, its validity and the breach of the promise to purchase insurance.

■■ Summary judgment is proper where there are no material issues of fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1977, ch. 110, par. 57.) Here, there is no dispute concerning the language or formation of the licensing agreement. Only its construction and validity are at issue, so summary judgment was a proper procedure.

*Simone Corp. v. Builders Architectural Products* (1975), 28 Ill. App. 3d 595, 597, 328 N.E.2d 723.

■■ The meaning of written agreements must be determined from the words used by the parties. (*Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604.) In construing an agreement to indemnify, the agreement must be given a fair and reasonable interpretation based upon consideration of all the language and provisions. (*Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272, 274.) Indemnity agreements are not void, but are sufficiently disfavored that they must be strictly construed. (*De Tienne v. S. N. Nielsen Co.* (1963), 45 Ill. App. 2d 231, 233, 195 N.E.2d 240, 242.) The theater here is asking the court to construe the licensing agreement so that it is indemnified for its own negligence in maintaining the theater exits. The rule in such situations was stated in *Westinghouse*:

> "It is quite generally held that an indemnity contract will not be construed as indemnifying one against his negligence, unless such a construction is required by clear and explicit language of the contract, * * * or such intention is expressed in unequivocal terms." *Westinghouse*, 395 Ill. 429, 433.

In *Westinghouse*, the operator of a building was seeking indemnity against losses "arising out of" work performed by the elevator company. The language of the indemnity clause was held to be too general to support a construction of the agreement which would indemnify the building operator for its own negligence. Later cases confirmed the rule that broad and general language cannot be used to indemnify one from one's own negligence. *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93 ("attributable directly or indirectly to the operations" held too broad); *Zadak v. Cannon* (1974), 59 Ill. 2d 118, 319 N.E.2d 469 ("arising out of such work" held too broad); *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272 ("arising out of or connected with" held too broad).

The licensing agreement called for indemnity "with respect to" any loss or damage to items or persons "brought into" the theater by the producers. The parties could have drafted an agreement explicitly calling for indemnification from the theater's own negligence—in one provision of the agreement the producers actually did release the theater from liability for any fire loss even if the fire "* * * shall be due to the negligence of Theatre." As noted in *Barger v. Scandroli Construction Co.* (1976), 38 Ill. App. 3d 348, 349, 347 N.E.2d 207, 208, it required no extraordinary skill in draftsmanship to bind the producers "* * * in words or phrases of absolute certainty as to require [them] to indemnify [the Theater] for [its] own negligence." The language employed in the

licensing agreement was too general and too broad to be construed as indemnifying the theater for its own negligence which resulted in the Bates' injury. See *Kerulis v. Tatera* (1977), 55 Ill. App. 3d 428, 371 N.E.2d 37.

■■ Even if that language were explicit enough to cover the theater's acts of negligence, the agreement still did not cover the injury to Bates. The object of the parties' venture was to draw patrons, such as Bates, to the Shubert Theater to see the performance, but the circumstances of the entire licensing agreement preclude the interpretation that patrons were "persons brought into" the theater by the producers. The production scheme made the producers generally responsible for what went on behind the curtain, while the theater was generally responsible for what went on in front of it. We note that under the licensing agreement the theater had veto power over the admission of anyone into the audience; likewise, the producers alone were responsible for the conduct of the company putting on the play. But Bates was not an actress, a member of the production crew, or a friend of the cast or company, was not an instrumentality on the producers and was not under their control. She was, simply, a theater-goer. Because we construe the indemnity agreement to cover only those persons brought into the theater by the producers to further the production, we decline to adopt the theater's version of the clause, which would make the producers responsible for anyone and everyone who came into the theater. Because Bates was a patron, she was not covered by the indemnity clause.

The policies which allow indemnification support this interpretation of the agreement. As the theater has argued, *Patent Scaffolding Co. v. Standard Oil Co.* (1966), 68 Ill. 2d 29, 215 N.E.2d 1, 3, noted that when businesses allocate losses through indemnity contracts, the incentive to minimize safety risks usually remains. The indemnitor, upon whom any loss will fall, will find it in his interest to take steps to insure public safety. But if the licensing agreement's indemnity clause were read to cover the Bates' injury, the policy of fostering public safety would be frustrated. Even though the producers bore the risk of Bates' slip and fall, they could nevertheless do nothing to prevent the accident. By the express terms of the licensing agreement, they were forbidden from doing anything to correct the theater's negligent maintenance. It would not be reasonable for the parties to provide that the loss would fall on one who did not control the means of accident prevention.

The circuit court correctly construed the licensing agreement as not applying to the theater's act of negligence to Bates, and properly granted summary judgment on count II against the theater. Because the licensing agreement as construed did not cover the injury in question, it is unnecessary to reach the issue of the validity of indemnity clause under

section 1 of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1977, ch. 29, par. 61).

The only question remaining is the circuit court's granting of summary judgment on count I. The theater alleged that the producers breached the licensing agreement by failing to purchase liability insurance as required, and asked for indemnity as relief. Similar contracts to buy insurance (which the theater here argued would provide a fund for the indemnity agreement) existed in *Zadak v. Cannon* (1974), 59 Ill. 2d 118, 319 N.E.2d 469; *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272; and *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604. In each of these cases, the indemnification which was sought as relief was denied because the contract to purchase insurance failed to explicitly state that it was the "indemnitee" ' s own negligence which was being insured. (*Zadak*, 59 Ill. 2d 118, 121-22; *Westinghouse*, 395 Ill. 429, 434.) The contract to purchase insurance here similarly failed to pass the *Westinghouse* test. (See *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 88, 392 N.E.2d 628, 638.) Thus, summary judgment was also properly granted against the theater on count I.

Judgment affirmed.

McNAMARA and RIZZI, JJ., concur.