JOHN S. ERVIN, Plaintiff, *v.* SEARS, ROEBUCK AND COMPANY *et al.*, Defendants (Sears, Roebuck and Company, Defendant and Third-Party Plaintiff-Appellee, *v.* Flagg-Utica Corporation *et al.*, Third-Party Defendants-Appellants).

Fifth District   No. 5—83—0447

Opinion filed August 16, 1984.—Supplemental opinion filed on denial of rehearing September 20, 1984.

Pope and Driemeyer, of Belleville (Allan Goodloe, Jr., of counsel), for appellants.

Carl W. Lee, of Gundlach, Lee, Eggmann, Boyle & Roesser, of Belleville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Flagg-Utica Corporation (Flagg) and American Mutual Liability Insurance Company (American), third-party defendants, appeal from summary judgments entered by the circuit court of Madison County in favor of Sears, Roebuck and Company (Sears), third-party plaintiff, in the sum of $95,234.57, on Sears' third-party complaint. For the reasons which follow, we affirm the summary judgment entered against American, and reverse and remand for further proceedings on Sears' third-party complaint against Flagg.

The history of this litigation is lengthy. In 1961 and 1962, Flagg sold underwear to Sears. The record contains several purchase contracts between Sears and Flagg in connection with this enterprise; each order is signed by at least one representative from each party. The majority of these contracts contain the following language:

"Seller agrees to protect, defend, hold harmless and indemnify Purchaser from and against any and all liability and expense arising out of the alleged or claimed infringement of any patent, trademark or copyright by merchandise furnished hereunder and any and all liability and expense (including but not limited to that arising out of death or injury to person or damage to property, by whomsoever suffered) arising out of any alleged or claimed defect in such merchandise, whether latent or patent, including allegedly improper construction and design, or

in the failure of said merchandise to comply with specifications or with any express or implied warranties of Seller or arising out of the alleged violation by such merchandise or in its manufacture or sale of any statute, ordinance or administrative order, rule or regulation. These agreements and obligations shall not be affected or limited in any way by Purchaser's extending express or implied warranties to its customers, except to the extent that any Purchaser's warranties extend beyond the scope of Seller's warranties, express or implied, to Purchaser.

Seller agrees to obtain and maintain, at its expense, during the term of this Contract, a policy or policies of Products Liability Insurance, with Vendor's Endorsement naming Purchaser, with amounts and in such companies and containing such other provisions which shall be satisfactory to Purchaser covering purchases of merchandise made hereunder. All such policies shall provide that the coverage thereunder shall not be terminated without at least ten days' prior written notice to Purchaser."

At least one of the contracts contained, in lieu of "from and against any and all liability and expense" in the first sentence, the phrase "from and against any and all claims, actions, liabilities, losses, costs and expenses."

As required by these agreements, Flagg obtained a policy of products liability insurance with a vendor's endorsement naming Sears. This policy was issued by American, and the vendor's endorsement states, in pertinent part:

"IT IS AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THE POLICY WITH RESPECT TO THE HANDLING OR USE OF OR THE EXISTENCE OF ANY CONDITION IN THE GOODS OR PRODUCTS MANUFACTURED, SOLD, HANDLED OR DISTRIBUTED BY THE NAMED INSURED, APPLIES TO ANY PERSON OR ORGANIZATION NAMED BELOW WITH RESPECT TO THE DISTRIBUTION OR SALE IN THE COURSE OF BUSINESS OF SUCH PERSON OR ORGANIZATION OF GOODS OR PRODUCTS MANUFACTURED, SOLD [,] HANDLED OR DISTRIBUTED BY THE NAMED INSURED [.]"

The policy itself contains the following provision:

"With respect to such insurance as is afforded by this policy, the company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seek damages on account

thereof, even if such suit is groundless, false or fraudulent; that the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

On June 30, 1963, John Ervin was severely burned while welding in a tunnel near Omaha, Nebraska. Ervin filed suit against Sears on December 11, 1964, alleging that he was burned while wearing thermal underwear purchased from Sears and containing a "Sears" label, and that his burns were caused when the underwear "burst into violent flames." Following the filing of Ervin's complaint, Sears tendered defense of the suit to Flagg and American, both of whom refused to defend.

In 1968, Sears filed a third-party complaint against Flagg, alleging that the underwear worn by Ervin at the time he was injured had been sold by Flagg to Sears. Sears sought judgment against Flagg "for such sums as may be adjudged against Sears, Roebuck and Company in favor of plaintiff John S. Ervin, and for all costs, expenses, and attorneys' fees" incurred by Sears. On May 23, 1969, Flagg filed a motion for summary judgment as to the third-party complaint. Attached to the motion was the affidavit of a vice-president of Flagg; this affidavit indicated that the underwear sold by Flagg to Sears in 1961 and 1962 contained the word "Pilgrim" on its label, and not the word "Sears."

In 1970, trial was held on the complaint filed by Ervin against Sears. During that trial, Dewey Ward, manager of the Sears store in Alton, Illinois, testified that the type of underwear carried in the Alton store during 1961 and 1962 came from Flagg. The jury subsequently returned a verdict in favor of Sears. While the trial court ordered a new trial, that order was reversed by this court, which directed the trial court to enter judgment on the jury's verdict. (*Ervin v. Sears, Roebuck & Co.* (1976), 36 Ill. App. 3d 64, 68, 343 N.E.2d 220.) Our decision was affirmed by the Illinois supreme court. *Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 357 N.E.2d 500.

On April 22, 1977, Sears was granted leave to amend its third-party complaint by adding two additional counts, one directed against American and one against Flagg. Count IV, the count directed against American, alleged that American, by virtue of its contract of insurance with Flagg and the vendor's endorsement thereto, was obligated to defend Sears in the action brought by Ervin, and failed to do so. Count VI alleged that, under the terms of the purchase contracts entered into between Flagg and Sears, Flagg was also obligated to defend Sears, and did not do so.

On March 1, 1983, Sears filed a motion seeking summary judg-

ment against Flagg and American. On June 1, 1983, following a hearing, the court entered summary judgment in favor of Sears and against both Flagg and American in the amount of $95,234.57. Of the amount awarded, $57,431.55 represents the total attorney fees and costs expended by Sears in defending the Ervin suit, while the remainder of the judgment represents prejudgment interest assessed on those fees and costs by the trial court. The trial court also denied the motion for summary judgment filed in 1969 by Flagg.

■ Before addressing the substantive issues presented by the trial court's entry of summary judgment against Flagg and American, we must first consider two procedural arguments advanced by these defendants. First, American asserts that Sears' action against it is barred by the 10-year statute of limitations applicable to contract actions. (Ill. Rev. Stat. 1977, ch. 83, par. 17, current version at Ill. Rev. Stat. 1983, ch. 110, par. 13–206.) While American points out that Sears tendered defense of the Ervin case to it and Flagg on June 17, 1965, and that American was not added as a defendant in Sears' third-party action until April 21, 1977, we believe that Sears' cause of action against American did not accrue when Sears first tendered defense of the Ervin suit. While there appears to be no case directly on point, those decisions involving enforcement by attorneys of their professional service contracts are instructive. In *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 647, 344 N.E.2d 770, the court held that "[A] cause of action for enforcement of an attorney's professional services contract to conduct certain litigation accrues from the time the services contracted for have been performed by the *ending* of the action" or some other termination of the retainer. (Emphasis added.) The rationale for this rule was well expressed in a case decided by our supreme court long ago:

"No other case than this could be required to illustrate the propriety of this rule. Here was a suit pending in court for more than twelve years, during all of which time the defense was conducted by these solicitors, with great ability, and the most constant assiduity, requiring, at one time, an almost constant attendance before the master, for about nine months, in stating the accounts of a partnership involved in that suit. Did the statute of limitations commence running at the termination of each day, as to the services rendered on that day? Were the solicitors obliged to pause in their defense, within each period of five years, to commence a suit against their clients for the services already performed, or forfeit them? The very statement of the proposition shows how embarrassing, inappro-

priate, and indeed, impracticable, such a rule would be." *Walker v. Goodrich* (1855), 16 Ill. 341, 343.

A careful consideration of the facts present in this case compels us to conclude that Sears' cause of action against American likewise accrued only when Sears finished defending the Ervin suit in 1976, when the Illinois Supreme Court issued its opinion in that case. The thrust of Sears' complaint against American is that Sears was forced to use its own attorneys and pay its own costs due to American's wrongful refusal to defend, and we think the policy considerations underlying the *Walker v. Goodrich* rule apply with equal force here. As in *Walker v. Goodrich*, compelling Sears to bring suit while its defense of the Ervin case was still incomplete would be most impractical, given that Sears' damages could not be calculated with any sense of finality, and that a contrary conclusion would encourage the piecemeal filing of claims condemned in *Walker v. Goodrich*. Accordingly, we conclude that the trial court properly found that Sears' action against American is not barred by the statute of limitations.

■ Next, American and Flagg assert that the judgments against them are barred by the doctrine of *res judicata*. American and Flagg rely on the fact that, in Federal litigation between Sears and American involving these same facts, the Federal district judge denied a motion for summary judgment filed by Sears. The Federal litigation, however, was ultimately dismissed without prejudice by stipulation of the parties. A voluntary dismissal of a cause of action does not preclude the filing of a new action based on the same matters (*Liddell v. Smith* (1965), 65 Ill. App. 2d 352, 360, 213 N.E.2d 604), and American and Flagg's reliance on the principles of *res judicata* in this case is therefore inappropriate.

■ Turning to the merits, we believe that the court properly entered summary judgment in favor of Sears and against American. As a general rule, the duty of an insurer to defend an action brought against the insured is determined solely from the allegations of the complaint. If the complaint alleges facts within or potentially within policy coverage, the insured is obliged to defend the action even if the allegations are groundless, false or fraudulent. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144, 384 N.E.2d 335.) Where potential coverage exists and an insurer unjustifiably refuses to defend, the insurer is estopped, because of its breach of contract, from disputing any question of coverage in any later action against it on the policy. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 451, 430 N.E.2d 1079.) The wrongful failure of the insurer to defend an action exposes the insurer to liability for the cost and expense which the insured was put to by the in-

surer's breach of the insurance contract, and this liability embraces reasonable attorney fees. *Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 397, 442 N.E.2d 245.

■ Application of these principles to the case at bar mandates the conclusion that summary judgment was properly entered against American. While Sears did not purchase the policy in question from American, it is an "insured" under the terms of the vendor's endorsement of that policy, which specifically indicates that "such insurance as is afforded by the policy" applies to the named vendor. Moreover, the allegations of Ervin's complaint against Sears alleged facts within or potentially within policy coverage, as Ervin's complaint alleged that Ervin had purchased thermal underwear from Sears during the time period in which Flagg was supplying that underwear to Sears. While it is asserted that the underwear in question may not have been made by Flagg, it is the allegations of the complaint, and not the results of independent investigation by the insurer, which determine the duty to defend. Indeed, the duty to defend is not annulled even when the insurer knows that the allegations of the complaint are untrue. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144, 384 N.E.2d 335.) If American believed that the underwear in question had been made by someone else, it should have either defended the Ervin suit under a reservation of rights or sought a declaratory judgment that there was no coverage; having done neither, its claim that there was no coverage under the policy comes too late. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 451, 430 N.E.2d 1079.) Accordingly, the trial court correctly entered summary judgment for Sears and against American.

■ In support of its claim that summary judgment was properly entered against Flagg under the terms of the purchase contracts earlier quoted, Sears relies on the rules discussed above with respect to American. Unlike American, however, Flagg is not an insurance company. Sears does not point out, and our research does not disclose, the existence of any Illinois case in which the rules articulated in *Thornton v. Paul* and like cases have been applied to situations not involving questions of coverage under an insurance policy. While Sears urges that this factor is immaterial, we do not agree. The purchase contracts between Flagg and Sears, which include language indicating that Flagg agrees to "protect, hold harmless and indemnify" Sears "from and against any and all liability" in connection with the subject underwear, seem to be more akin to indemnity agreements than to insurance policies. This distinction is significant, since, unlike insurance policies, which are subject to a general rule of liberal construction in favor of the insured (*Cook v. Suburban Casualty Co.* (1964), 54 Ill.

App. 2d 190, 203 N.E.2d 748), indemnity agreements are sufficiently disfavored that they must be strictly construed (*Bates v. Select Lake City Theater Operating Co.* (1979), 78 Ill. App. 3d 153, 155, 397 N.E.2d 75). While we recognize that the contract in question also obligated Flagg to defend Sears in suits involving Flagg's products, we think the analogy to an indemnity contract is nonetheless more appropriate than the analogy to an insurance policy proposed by Sears. To hold here that the contracts between Flagg and Sears should be interpreted so broadly as to require Flagg to defend based merely on the allegations of the Ervin complaint would do violence to the rule of strict construction applied to contracts of this type, and we decline to do so. Simply stated, while the law expressly prohibits those in the business of insurance from refusing to defend based on what they have discovered from "looking behind" the subject complaint, no such restriction is imposed on a business which, as part of its agreement with a purchaser of its products, agrees to defend and/or indemnify that customer in suits involving those products. While no Illinois court has had occasion to consider the viability of this distinction, we think it to be a reasonable one. As noted by our supreme court long ago, an insurance company's agreement to defend actions against the insured is one of the "fundamental obligation[s]" of the insurance contract (*Kinnan v. Hurst Co.* (1925), 317 Ill. 251, 257, 148 N.E. 12); in contrast, the agreement to defend and indemnify in a contract of the type between Flagg and Sears is incidental to the main purpose of the agreement; namely, the purchase and sale of a product. Given the unique position of an insurance company as a professional "seller" of protection against loss, and the fundamentally different role of the manufacturer of goods, we hold that it is not unreasonable to compel American to defend the suit based on the allegations of Ervin's complaint, while allowing Flagg a greater degree of freedom to investigate those allegations for the purpose of determining what its contractual obligations to Sears in connection with the Ervin suit in fact are.

■■ ■ In light of our conclusion that Flagg was not obligated to defend Sears based solely upon the allegations of the Ervin complaint, and that Flagg was entitled to investigate the truth of those allegations, we must also conclude that there exists a question of fact as to whether Flagg breached its contract with Sears. Where in the construction of a contract a legal principle is not involved, but simply a determination as to whether facts offered in evidence come within the provisions of the contract legally construed, a factual question exists. (*Tomasek v. City of Edwardsville* (1913), 183 Ill. App. 493, 498.) Such

is the case here with respect to Flagg. If Flagg made the underwear worn by Ervin, it breached its duty to defend Sears; if it did not make the underwear, it breached no duty. Notwithstanding the many years of litigation between these parties, we cannot say that this question has been answered. It was not at issue in the trial of Ervin's complaint against Sears, and has never been decided in the third-party litigation. Accordingly, we reverse the summary judgment entered against Flagg, and remand for trial on the issue of whether Flagg manufactured the underwear worn by Ervin at the time he was burned.

■■ Finally, it is contended that the court erred in assessing prejudgment interest. In view of our conclusion that summary judgment was improperly entered against Flagg, we need not address this issue with respect to Flagg at this time. With respect to American, the trial court acted properly. It has long been held that an insurance policy is an "instrument of writing" within the meaning of the statute authorizing prejudgment interest (Ill. Rev. Stat. 1983, ch. 17, par. 6402), and that interest may be recovered from the time money becomes due under the policy. (*Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.* (1977), 45 Ill. App. 3d 401, 408, 359 N.E.2d 797.) While American asserts that its failure to pay the money ultimately found to be owed to Sears was not vexatious or unreasonable, the existence of a good-faith defense does not preclude recovery of interest. (45 Ill. App. 3d 401, 408.) Accordingly, the trial court properly awarded Sears prejudgment interest calculated from the dates on which costs and attorney fees were incurred by Sears in defense of the Ervin suit.

■■ For the foregoing reasons, the summary judgment entered by the circuit court in favor of Sears and against American Mutual is affirmed. The summary judgment in favor of Sears and against Flagg-Utica is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.

WELCH, P.J., and KARNS, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE HARRISON delivered the opinion of the court:

■■ In a petition for rehearing filed in this case, American contends that we erred in concluding that Sears' cause of action against

American was not barred by the statute of limitations. The insurance policy issued by American provided, however, that "no action shall lie against the company unless, as a condition precedent thereto *** the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company." Under these circumstances, where the policy clearly operated to prohibit the insured from bringing suit prior to the time that its financial obligations to a third party could be calculated, Sears' cause of action against American did not accrue on the date that American refused to defend the Ervin suit (see *Olipra v. Zambelli* (1971), 1 Ill. App. 3d 607, 611, 274 N.E.2d 877); rather, it accrued no earlier than 1976, when Sears expended its final attorney fees and costs in connection with the Ervin suit. The instant case is thus distinguishable from *Del Bianco v. American Motorists Insurance Co.* (1979), 73 Ill. App. 3d 743, 392 N.E.2d 120, relied on by American, where the insurance policy under consideration contained no clause dictating the time at which a suit by the insured could be brought.

WELCH, P.J., and KARNS, J., concur.