**The MARMON GROUP, INC.,**
**Plaintiff-Appellant,**

v.

**REXNORD, INC., Defendant-Appellee.**

**No. 86–2604.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1987.

Decided June 5, 1987.

32

Susan M. Franzetti, Martin Craig Chester & Sonnenschein, Chicago, for plaintiff-appellant.

John A. Heller, Sidley & Austin, Chicago, for defendant-appellee.

Before CUDAHY, FLAUM and RIPPLE, Circuit Judges.

PER CURIAM.

Appellant, the Marmon Group, Inc. (Marmon), asks this court to reverse the judgment of the district court dismissing its complaint against Rexnord, Inc. (Rexnord) for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Because we conclude that the standards governing such a dismissal were incorrectly applied by the district court, we reverse the judgment and remand for further proceedings.

I

In May 1974, Marmon contracted in writing to purchase the business and assets of Perfection Gear Division of Rexnord. This purchase included a facility in Darlington, South Carolina where Rexnord manufactured gears. The purchase agreement contained the following language:

Title to the Assets shall pass to Buyer on the Closing Date upon delivery of the instruments of sale, assignment and transfer. Seller will put Buyer in full possession and enjoyment of all the Assets at the Closing Date, and from and after the Closing the ownership and operation of the Assets and the business of the Seller to be sold pursuant to this Agreement shall be for the account and risk of Buyer, and Seller shall be under no liability therefor. Buyer shall be under no liability for debts, liabilities or obligations of Seller incurred prior to or after the Closing or arising out of transactions by Seller or events occurring with respect to Seller in connection with the operation of the business of Perfection, unless assumed in writing by Buyer.

Complaint, R. 1, Ex. 2 at 4, ¶ 3(D). In the twelve years following the purchase, Marmon continued to make gears at this location. In 1982, during a routine inspection by inspectors from the South Carolina Department of Health and Environmental Control (DHEC), "cutting oil," a product used by both Marmon and Rexnord in the

manufacturing process, was found on the property. DHEC issued an order stating that: "waste oil had been allowed to drain both from the former storage area through a pipe and from the present drum storage area onto a low area of ground." Complaint, R. 1, Ex. 3 at 2, ¶ 2. The order also noted that unused oil had been spilled from the storage tanks. *Id.* The order required Marmon to study the effects of the oil spillage, to propose a plan and timetable to remedy the effects, and to implement the plan once the state approved it.

Marmon brought this action against Rexnord in September 1985. It alleged 1) a claim under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*, 2) a variety of breach of contract and warranty claims, and 3) related private nuisance claims. The district court dismissed the CERCLA count on the ground that the "cutting oil" was not a substance regulated by CERCLA. Count II alleged that, under the indemnity clause of the sales agreement, Rexnord agreed to remain liable for its debts, liabilities, or other obligations connected with the Perfection Gear business. This count was dismissed because:

> the indemnity clause would not encompass liability for a violation of an environmental regulation not in existence at the time of the sale. It is impossible, given the facts before the court, to conclude precisely what liabilities were within the contemplation of the parties at the time of the sale. However, it is clear that neither could contemplate or discuss a liability which would arise from environmental regulations not enacted when the assets were transferred from defendant to plaintiff.

1. The indemnification agreement provides, in pertinent part:

 12. *Indemnity.* Seller will indemnify and hold Buyer harmless against and in respect of:
 (A) Any and all liabilities of Seller of any nature, whether absolute, accrued, contingent or otherwise, existing at the Closing Date or arising out of any transaction of the Seller or Perfection prior to the Closing Date including, but not limited to, all product liability relating to those commitments listed in Exhibit 5 hereto, which Buyer expressly assumes.

*Marmon Group, Inc. v. Rexnord, Inc.*, No. 85 C 7838, mem. op. at 8 (N.D.Ill. June 16, 1986) [Available on WESTLAW, DCT database]; R. 25 at 8 [hereinafter cited as mem. op.]. The remaining counts, not at issue on this appeal, were also dismissed.

## II

In this court, Marmon argues that the district court erred in dismissing Count II of its complaint. In essence, it argues that the district court impermissibly speculated about the intent of the parties with respect to the scope of the indemnity agreement.[1] It submits that it is entirely possible that:

> two sophisticated parties like Marmon and Rexnord would contemplate potential environmental liability in light of the legislative climate in South Carolina at the time of the sale. It is readily apparent from a plain reading of the indemnity clause that Marmon sought to indemnify itself from future claims arising out of the seller's (Rexnord's) operation of the business, specifically, those which it could not accurately reduce to writing.

Appellant's Br. at 10.

Rexnord counters that the purchase agreement and the DHEC consent order (both of which were attached to the complaint, *see* Fed.R.Civ.P. 10(c)) make it clear that Marmon has no right to recover under the indemnification agreement:

> This contractual language is unambiguous. It plainly promises indemnification by Rexnord *only* for "liabilities of Seller [Rexnord]." The sole liability for which indemnity is sought in this case, however, is that imposed against Marmon's Perfection American Company pursuant to the consent order which Per-

* * * * * *

(C) Any and all liabilities of Seller arising out of or in connection with any action, suit or proceeding, either in law or in equity, or before any commission or other administrative authority, of any kind in any manner involving Seller or Perfection.
Any such payment shall be made by Seller to Buyer within ten (10) days after notice to Seller of the determination of such liability.
Complaint, R. 1, Ex. 2 at 17–18, ¶ 12.

fection American voluntarily signed in June of 1983.

\* \* \* \* \* \*

Nothing in the language of the purchase agreement suggests that the parties intended Rexnord to be responsible for liabilities incurred by Marmon as a result of Marmon's concession, nearly a decade after the sale, that it had violated statutes and regulations that did not even come into existence until several years after the sale. The district court therefore properly declined to insert such an expansive obligation into the indemnity clause.

Appellee's Br. at 7, 9.

Our disposition of this contention is governed by a well-established principle:

At this stage of the litigation, we must accept [appellant's] allegations as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

*Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). While the foregoing statement has not been interpreted literally, *see American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir.1986), it is clear that the decision to dismiss a complaint "is not a decision for the district court to make lightly." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). The district court "must accept the well-pleaded allegations of the complaint as true. In addition, the court must view these allegations in the light most favorable to the plaintiff." *Id.*

We must take the allegations in the complaint to be true and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiffs.... A com-

plaint should be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff is unable to prove any set of facts that would entitle the plaintiff to relief.... A plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action.

. . .

*Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 414 (7th Cir.1986) (citations omitted); *accord Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir.1985).

 In our view, application of this principle to the facts of this case requires that Count II of the complaint be reinstated. As the appellees note, in Illinois,[2] "[c]ontracts of indemnity are to be strictly construed, and the courts will not read into the contract an indemnity term where it is clear from the language of the contract that no such term was intended." *Talandis Constr. Corp. v. Illinois Bldg. Auth.*, 23 Ill.App.3d 929, 321 N.E.2d 154, 158 (1974); *see also Bates v. Select Lake City Theatre Operating Co.*, 78 Ill.App.3d 153, 33 Ill.Dec. 742, 744–745, 397 N.E.2d 75, 77–78 (1979). However, before the district court can determine the scope of the indemnity provision, the litigation must progress beyond the initial pleading. As we noted in *Sunstream Jet Express, Inc. v. International Air Serv. Co.*, 734 F.2d 1258 (7th Cir.1984), under Illinois law, even "[i]n determining whether an ambiguity exists, as a matter of law, the trial court may consider parole and extrinsic evidence." *Id.* at 1268.

By our action today, we do not mean to imply that this litigation necessarily need go beyond the summary judgment stage. Indeed, it may well be that further pre-trial

---

**2.** The parties agree that Illinois law should govern Marmon's breach of contract claim. Because 1) the contract was executed in Illinois, 2) Marmon's principal place of business is in Illinois, and 3) Rexnord is licensed to do business in Illinois, this is a "reasonable stipulation[] of choice of law," and it will be honored. *See*

*Lloyd v. Loeffler*, 694 F.2d 489, 495 (7th Cir. 1982); *see also Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1231 n. 1 (7th Cir.1985) (acquiescence to court's choice of law amounts to waiver of any objection to such choice).

exploration will quite firmly establish the allocation of risks that the parties intended. However, as the district court noted, "[i]t is impossible, given the facts before the court, to conclude precisely what liabilities were within the contemplation of the parties at the time of the sale." Mem. op. at 8; *see Chicago & N.W. R. Co. v. Chicago Packaged Fuel Co.*, 183 F.2d 630, 632 (7th Cir.1950). Dismissal on the basis of the complaint is, therefore, improper.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.