NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0134n.06

No. 14-3249

**FILED**
Feb 18, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MARY FAETH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DIVERSIFIED MAINTENANCE SYS., INC., | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellant, | ) | |
| | ) | OPINION |
| SEARS, ROEBUCK & CO., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: BOGGS and GRIFFIN, Circuit Judges; and HOOD, District Judge.[*]

BOGGS, Circuit Judge. This case concerns the interpretation of an indemnity contract between Defendant-Appellee Sears, Roebuck & Co. (Sears), which operates retail stores, and Defendant-Appellant Diversified Maintenance Systems (Diversified), which cleans and maintains those stores. In one such store, Plaintiff Mary Faeth tripped and fell. Faeth sued and later settled with both defendants. Sears moved for summary judgment, claiming that the indemnity contract obliges Diversified to pay Sears's defense costs. The district court granted summary judgment to Sears. We affirm that judgment for the reasons stated below.

---

[*] The Honorable Joseph M. Hood, Senior District Judge for the Eastern District of Kentucky, sitting by designation.

1

# I

Sears hired Diversified to clean and maintain Sears's retail locations. The contract between Sears and Diversified, the so-called housekeeping agreement, provided that Diversified would indemnify Sears from any claims arising out of any injury related to Diversified's services, acts, or omissions and that Diversified would defend Sears from all allegations asserted in any claims.[1]

On February 19, 2011, Mary Faeth, a customer, tripped and fell at a Sears store in Cincinnati. Alleging that the cause of her fall was the negligent maintenance of a rug, either by Sears or Diversified, she sued both.

After discovery, both defendants filed motions for summary judgment against Faeth. Faeth settled with both before the court ruled on the motions. Diversified paid the settlement. Sears requested that Diversified pay Sears's legal costs, but Diversified refused. Sears filed a crossclaim and sought summary judgment against Diversified. The court granted Sears's motion. Diversified appeals.

---

[1] Pertinent provisions of the contract include:

> 4.1 **Indemnification**. To the fullest extent permitted by law, *Contractor* [i.e., *Diversified*] *shall* protect, *indemnify* and hold harmless . . . *Sears* . . . (collectively, the "Indemnified Parties"), *from and against any and all claims*, demands, actions, causes of action, liabilities, damages, losses, fines, penalties and expenses, *including, without limitation, reasonable attorneys' fees and expenses, resulting from or arising out of any injury to* or death of *any person*, damage to any property, or other loss, cost or damage or expense *arising out of or related to the following*: (I) [sic] *the Services or any acts, errors or omissions of Contractor*, its employees or Subcontractors, whether or not lawful or within the scope of their employment . . . .
>
> . . .
>
> 4.3 **Attorneys Fees**. *The indemnity obligations* of Contractor under this Article 4 *also include*, without limitation, *all costs, expenses and reasonable attorneys' fees* incurred by the Company to enforce the obligations of Contractor under this Article 4.
>
> 4.4 **Defense Obligations**. *Contractor shall, at its own cost and expense, defend the Indemnified Parties from and against all allegations (even though such allegations may be false, fraudulent or groundless) asserted in any and all Claims*, whether actual or alleged and whether or not Contractor's indemnity obligations under Company in the defense of the Claims. . . .

(emphases added).

## II

We review a district court's grant of summary judgment de novo. *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). As a general matter, courts interpret unambiguous terms of contracts according to their plain, ordinary meaning. Neither party argues that there is an ambiguity in the contract. However, Diversified argues that, in this case, the relevant law requires using evidence extrinsic to the contract. The contract between Sears and Diversified is governed by Illinois law.

Diversified's argument relies on *Ervin v. Sears, Roebuck & Co.*, 469 N.E.2d 243 (Ill. App. Ct. 1984). In that case, plaintiff Ervin was burned, allegedly "while wearing thermal underwear purchased from Sears and containing a 'Sears' label." *Id.* at 247. After Ervin filed a complaint, "Sears tendered defense of the suit to Flagg," *ibid.*, which had sold underwear to Sears, *id.* at 246, and to the insurance company that had sold to Flagg a products-liability policy "naming Sears," *id.* at 246-47. The Illinois state trial court granted summary judgment to Sears both against the insurance company and against Flagg.

The intermediate appellate court reversed the trial court's grant of summary judgment to Sears against Flagg. *Id.* at 250. The *Ervin* court reasoned that, while "insurance policies . . . are subject to a general rule of liberal construction in favor of the insured," the contract between Flagg and Sears was an *indemnity* agreement, and those "are sufficiently disfavored that they must be strictly construed." *Id.* at 249. From this distinction, the court concluded that while the law prohibits *insurance* firms from "looking behind" a complaint to determine whether or not its allegations are true, a seller *may* do so before fulfilling an agreement "with a purchaser of its products . . . to defend and/or indemnify that customer in suits involving those products." *Ibid.*

3

In other words, the *Ervin* court held that Flagg's status as a producer, rather than an insurer, entitled it to confirm the merits of Ervin's complaint before defending Sears.

From this example, Diversified argues that its status entitles it to "look behind" Faeth's complaint in order to determine whether Diversified's negligence really did cause her injury. According to Diversified's reading of *Ervin*, Diversified must defend only if the complaint is true. Sears claims that Diversified's employee caused Faeth's injury and that the employee admitted as much immediately after Faeth's fall. Diversified denies these claims and supports its denial with the employee's sworn statement. Because the parties dispute whether Faeth's complaint is true, Diversified concludes that summary judgment is inappropriate.

Diversified's conclusion is wrong for two reasons.

First, Illinois courts have limited *Ervin*'s rule that courts must strictly construe indemnity clauses. *See Applied Industrial Materials Corp. v. Mallinckrodt, Inc.*, 102 F. Supp. 2d 934, 939 (N.D. Ill. 2000). As a preliminary matter, "the strict construction rule applies only where the indemnification is designed to protect one from his or her own negligence or conduct." *Ibid.* (internal quotation marks omitted). This application explains the *Ervin* court's hostility to "indemnity agreements." The analogy to the present case would be a contract by which Diversified agreed to indemnify and defend Sears against allegations arising from Sears' own conduct, whether or not the plaintiff alleged Diversified to have been involved in the tort. But, in the present case, Diversified agreed to indemnify and defend Sears against allegations arising—as, arguably, did this one—out of *Diversified*'s conduct. In other words, the *Ervin* court interpreted narrowly a tortfeasor's contract rendering another, not factually at fault, liable for the tort. In this case, an alleged tortfeasor (Diversified) is liable for its own tort—or for the costs of showing that it is not at fault.

4

Illinois also limits *Ervin*'s rule of strict construction to indemnity contracts that are ambiguous. *Ibid.* The "four-corners rule" remains the rule: "Traditional interpretation principles in Illinois require that" courts presume a written agreement "to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (internal quotation marks omitted). "*Indemnity agreements* are *enforceable contracts*, and [courts] must interpret them so as to give effect to all of the parties' intent." *Hanley v. Balbo Co.*, 1998 WL 673647, at *1 (N.D. Ill. Sept. 16, 1998) (emphases added).

Even if *Ervin* governed the present case, *Ervin* itself does not say that indemnitors may look to whether a complaint complains of an *event* that happened. The *Ervin* court "looked behind" the complaint in that case only to determine whether the indemnitor actually manufactured the thermal underwear in question. The *Ervin* court did not find that the indemnitor had manufactured the allegedly defective product, and so did not reach the question of the indemnitor's refusal to indemnify and defend Sears breached its contract.

Because the general rules of contract interpretation apply to the present case, Diversified's argument fails. The housekeeping agreement is not ambiguous. Diversified contracted to defend Sears against all claims, meritorious or otherwise, arising from Diversified's services. Diversified's services included maintaining the rugs in Sears's Cincinnati store. Faeth's claim arose out of her allegation of negligent maintenance of one of those rugs. Therefore, the contract requires Diversified to defend Sears against her claim.

For the foregoing reasons, we AFFIRM the judgment of the district court.