2025 IL App (1st) 240839-U

No. 1-24-0839

Order filed February 5, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| JOEL A. BRODSKY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 L 1915 |
| | ) | |
| GAMON PLUS, INC., and GAMON INTERNATIONAL, INC., | ) | Honorable |
| | ) | Thomas More Donnelly, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Martin and R. Van Tine concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court's judgment dismissing plaintiff's complaint for attorney fees is affirmed.

¶ 2   Plaintiff Joel Brodsky sued defendants Gamon Plus, Inc., and Gamon International, Inc., to recover attorney fees on a *quantum meruit* basis in 2023, more than five years after his representation was terminated in February 2016. Defendants moved to dismiss plaintiff's

complaint as being time-barred by the statute of limitations, and the trial court agreed. Plaintiff now appeals the dismissal with prejudice of his complaint.

¶ 3    For the reasons that follow, we affirm the judgment of the trial court.[1]

¶ 4                                   I. BACKGROUND

¶ 5    In September 2014, plaintiff, a solo practitioner, and another attorney, Andrew Tiajoloff, entered into an agreement with defendants to represent defendants in a patent dispute against Campbell Soup Company. The agreement stated that the attorneys, including plaintiff, were entitled to 40% of any recovery. Several months later in January 2015, plaintiff, defendants, and Tiajoloff entered into a supplemental agreement with the firm Niro, McAndrews, Dowell & Grossman (Niro McAndrews) in which Niro McAndrews would receive 25% of any recovery from the suit, while plaintiff and Tiajoloff would receive 7.5% each. Plaintiff and Tiajoloff received an estimation that the case had damages worth tens of millions of dollars. Niro McAndrews then sought a third-party willing to finance the litigation costs.

¶ 6    Niro McAndrews filed a patent infringement suit against Campbell Soup Company on October 8, 2015. Negotiations with a third-party to finance the litigation continued. However, after the patent infringement suit was filed, according to the findings of the Attorney Registration and Disciplinary Commission (ARDC), which are discussed later in this order, plaintiff "began interjecting himself in ways that were not productive."

¶ 7    On February 9, 2016, Niro McAndrews, based on communication with the litigation financer, sought to change the nature of the representation defendants were receiving and

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

circulated a draft agreement under which plaintiff would withdraw as attorney of record and perform work only as requested. These changes did not impact plaintiff's entitlement to 7.5% of any recovery, but they did allow Niro McAndrews to collect both hourly fees and a contingency fee. Plaintiff and Tiajoloff contacted defendants and encouraged them to obtain independent legal counsel regarding the proposed agreement or fire Niro McAndrews.

¶ 8    The same day, without authorization from defendants, plaintiff emailed Niro McAndrews, claiming to terminate Niro McAndrews's representation. Plaintiff also emailed opposing counsel notifying them of the same. The following day, defendants terminated plaintiff's representation. Plaintiff then filed a Notice of Attorney's Lien and served it on numerous parties, including the potential litigation financer, which plaintiff identified by name on the service list. The identity of the litigation financer, up until that point, had been confidential and undisclosed. Furthermore, the financer had not yet finalized a contract with defendants.

¶ 9    On February 11, 2016, Niro McAndrews filed an emergency motion to terminate plaintiff's representation as plaintiff had refused to withdraw. Three days later, plaintiff filed a motion to disqualify Niro McAndrews, identifying himself as attorney for defendants and attached a personal affidavit alleging that Niro McAndrews was exploiting defendants. The motion divulged privileged material including the fee arrangement, counsel's litigation strategy, financing arrangements, and defendant's damages. Niro McAndrews asked plaintiff to withdraw his motion as it was not filed under seal. Plaintiff refused and Niro McAndrews filed an emergency motion to seal the motion to disqualify and a motion to strike or seal plaintiff's Notice of Attorney's Lien. On February 19, 2016, the trial court terminated plaintiff's representation of defendants and granted Niro McAndrews's motion to seal plaintiff's motion to disqualify. On February 25, 2016,

the trial court granted Niro McAndrews's motion to strike or seal plaintiff's Notice of Attorney's Lien.

¶ 10    In August 2016, plaintiff filed suit against defendants, Niro McAndrews, and others, seeking compensation for his representation of defendants in their patent suit. That suit was settled in April 2017. As a result of that settlement, plaintiff was entitled to a referral fee equal to 3.75% of the net recovery of defendants' suit against Campbell Soup Company. The settlement agreement stated that plaintiff and Niro McAndrews were jointly financially responsible for the representation, but otherwise specified that plaintiff would have no further involvement in the patent suit. Following the settlement, the trial court dismissed plaintiff's suit with prejudice.

¶ 11    In August 2018, the ARDC filed a three-count complaint against plaintiff regarding his conduct in defendants' patent suit and other cases. On June 23, 2020, the hearing board determined that plaintiff's conduct regarding defendants violated Rules 1.2 and 1.16(a)(3) of the Illinois Rules of Professional Conduct. The board ultimately recommended that plaintiff be suspended for two years and until further order of the Illinois Supreme Court and cited plaintiff's "relentless vindictiveness," "failure to recognize the wrongfulness of much of his conduct," and "lack of sincere remorse." In November 2020, the Illinois Supreme Court allowed a motion to approve and confirm the hearing board's recommendations.

¶ 12    On February 23, 2023, plaintiff filed a complaint against defendants seeking to "enforce the parties' written Settlement Agreement for *quantum meriut* [sic] recovery." The complaint sought an order entitling plaintiff to fees in an amount equal to 3.75% of any amount recovered by defendants from its patent suit. That complaint was subsequently amended on February 9, 2024.

¶ 13    Defendants filed a motion to dismiss which claimed, among other reasons, that plaintiff's claim was barred by a 5-year statute of limitations. Plaintiff responded that his claim only accrued following his suspension from the practice of law because prior to that he could not seek *quantum meruit* relief due to the existence of an enforceable contract.

¶ 14    On April 2, 2024, the trial court dismissed plaintiff's complaint on the basis that the statute of limitations on plaintiff's claim expired prior to the filing of his complaint. This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    Plaintiff argues that the trial court erred in finding that plaintiff's statute of limitations for his *quantum meruit* claim had lapsed because his suspension from the practice of law gave rise to a new claim for fees that did not previously exist. Plaintiff asserts that this is an unprecedented novel issue, but he has simply conflated novel with contrived. We review a trial court's ruling on a motion to dismiss *de novo*. *Ciolino v. Simon*, 2021 IL 126024, ¶ 20.

¶ 17    We begin with the recitation of some basic legal principles. An attorney who enters into a contingent-fee agreement with a client and is discharged by the client without cause is entitled to be paid on a *quantum meruit* basis a reasonable fee for services rendered before discharge. *In re Estate of Horwitz*, 371 Ill. App. 3d 625, 631 (2007). An attorney's claim for compensation under a *quantum meruit* theory accrues immediately after his services are terminated even in the absence of monetary recovery. *Id*. A *quantum meruit* claim for fees is subject to a five-year statute of limitations. *Mann v. Thomas Place, L.P.*, 2012 IL App (1st) 110625, ¶ 14; 735 ILCS 5/13-205 (West 2022). Plaintiff does not dispute any of these legal principles.

¶ 18    Plaintiff also does not dispute that his representation of defendants was terminated on February 10, 2016, meaning that his claim for fees under a *quantum meruit* theory accrued at that

time and the statute of limitations began to run. This means that the statute of limitations for a complaint for fees on a *quantum meruit* basis would have lapsed in February 2021.

¶ 19    Nevertheless, plaintiff insists that a new cause of action accrued upon his suspension from the practice of law based on the operation of Supreme Court Rule 764(h). Illinois Supreme Court Rule 764(h) forbids disciplined attorneys from receiving compensation for the referral of a legal matter. Ill. S. Ct. R. 764(h) (eff. Aug. 27, 1990). However, a disciplined attorney may receive compensation on a *quantum meruit* basis for legal services rendered prior to the effective date of the order of discipline. *Id.*

¶ 20    While plaintiff repeatedly asserts that his suspension from the practice of law created a new cause of action with a new statute of limitations, these assertions are not accompanied by any relevant legal authority. The three primary cases cited by plaintiff, including one which is 175 years old, have nothing to do with Rule 764(h), a disciplined attorney's attempt to recover fees, or multiple *quantum meruit* claims for the same injury. See *Walker v. Goodrich*, 16 Ill. 341 (1855); *Matchett v. Rose*, 36 Ill. App. 3d 638 (1976); *Ervin v. Sears, Roebuck and Co.*, 127 Ill. App. 3d 982 (1984).

¶ 21    Plaintiff further argues that his 2017 settlement agreement that spawned out of his suit against defendants was actually a contingency-fee agreement which created a new attorney-client relationship between plaintiff and defendants. Thus, he argues, when his suspension from the practice of law invalidated that agreement, it was as though his representation had been terminated all over again, creating a new cause of action for *quantum meruit* fees. He argues this is the case because the settlement agreement, which classified his payment as a referral agreement, stated that both he and Niro McAndrews "agree[d] to assume joint financial responsibility for the

representation" of defendants. This provision adhered to Illinois Rule of Professional Conduct 1.5(e). Ill. R. Prof'l Conduct 1.5(e) (eff. Jan. 1, 2010).

¶ 22    The fact that the settlement agreement made plaintiff a possible debtor does not persuade us. As defendants point out, there is no other evidence in the record that defendants sought to rehire plaintiff as their attorney or sought plaintiff's legal advice after February 2016, and in fact, the settlement agreement stated, "Brodsky understands and agrees that he will have no further involvement in the Federal Action [*i.e.* the Patent Suit]." See *Rubin and Norris, LLC v. Panzarella*, 2016 IL App (1st) 141315, ¶ 38 (the formation of an attorney-client relationship "hinges upon the putative client's manifested intention to seek professional legal advice and his reasonable belief that he is consulting a lawyer in that capacity.").

¶ 23    Moreover, the 2017 settlement agreement could not have been a contingency-fee agreement between an attorney and a client because defendants did not have a right to terminate the settlement agreement at any time as a client would ordinarily be able to do with a contingency-fee agreement. See *Much Shelist Freed Denenberg and Ament, P.C. v. Lison*, 297 Ill. App. 3d 375, 378-79 (1998) (a client may discharge an attorney at any time, with or without cause, and doing so causes a contingent-fee contract to cease to exist). Thus, we cannot agree that the 2017 agreement, which settled and terminated a lawsuit against defendants, somehow also restarted the attorney-client relationship between plaintiff and defendants. In fact, the 2017 settlement agreement was designed to prevent plaintiff from having any further connection to defendants' patent suit. Given our resolution on this point, the rest of plaintiff's argument regarding the supposed existence of a new cause of action fails.

¶ 24   Plaintiff's argument that Rule 764(h) operates to create a new cause of action simply by virtue of its proscription of referral fees for suspended attorneys would also require us to interpret Rule 764(h) in a way that its language cannot possibly bear. When interpreting a supreme court rule, we are governed by the same rules that govern statutory interpretation. *Johansson v. Glink*, 2021 IL App (1st) 210297, ¶ 40. Under those rules, our primary objective is to ascertain and give effect to the intent of the rule's drafters. *Id*. The most reliable indicator of the drafters' intent is the language used in the rule itself, which should be given its plain and ordinary meaning. *Id*.

¶ 25   Rule 764, which is titled, "Duties of a Disciplined Attorney and Attorneys Affiliated with Disciplined Attorney," and Rule 764(h) in particular, contain no language indicating that suspension or other discipline creates a new cause of action for fees. The rule simply states that disciplined attorneys may receive compensation on a *quantum meruit* basis for services rendered prior to the effective date of discipline. Ill. S. Ct. R. 764(h) (eff. Aug. 27, 1990). And in another sentence, the rule states that disciplined attorneys may not receive any compensation related to the referral of a legal matter. *Id*. The rule says nothing about the date of accrual of causes of action for fees or the statute of limitations for such claims. Interpreting this language in a way that the act of plaintiff's suspension creates a new cause of action would require us to read into the rule a considerable amount of language that simply does not exist.

¶ 26   There is also illogic to plaintiff's position that cannot be reconciled. He asserts that his claim for fees is based on a new *quantum meruit* cause of action that accrued upon his suspension, and that his claim is based upon a "new" contingency-fee agreement that demonstrated an ongoing attorney-client relationship. However, plaintiff's briefing insists that he is seeking fees for work performed *prior* to his termination in February 2016. In essence, plaintiff admits a cause of action

accrued in 2016 upon his termination for work performed prior to February 2016. However, he argues that, by virtue of the disciplinary action against him, a new cause of action accrued following his suspension for the *same exact injury*. This is despite the fact that, at the time of plaintiff's suspension, the statute of limitations for the claim that accrued in February 2016 had not expired and would not expire until February 2021.

¶ 27 Not only is it illogical to say that plaintiff could have two separate causes of action, with two separate, but overlapping, statutes of limitations, for the same exact injury, but as defendants aptly point out, such an interpretation is also contrary to sensible public policy. Plaintiff's suspension was inextricably tied up in the facts of this case. To find that a cause of action accrued upon plaintiff's termination, and again upon plaintiff's suspension, would effectively place plaintiff in a better position than if he had not been disciplined. Plaintiff would have had an additional opportunity to collect fees because of his misconduct toward defendants and others. To endorse his position would require us to find an attorney-client relationship in 2017 and beyond where the record shows none existed and interpret Rule 764(h) in a tortured way that would also leave disciplined attorneys in a better position than attorneys that abide by their professional rules and ethical norms.

¶ 28 Accordingly, we find no error in the trial court's dismissal of plaintiff's complaint based on the statute of limitations. We need not address the other bases raised by defendants by which we might affirm.

¶ 29 Additionally, defendants ask us to impose sanctions on plaintiff pursuant to Rule 375(b) for litigating what defendants argue is a frivolous appeal due to plaintiff's complete lack of factual and legal support for his appeal, and because plaintiff's appeal is attempting to recover a referral

fee, which his suspension precludes, rather than attorney fees. Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). Rule 375(b) authorizes sanctions in cases where we determine that an appeal is frivolous, not taken in good faith, or taken for improper purpose such as to harass or cause unnecessary delay. *Id*. An appeal will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. *Id*. "Otherwise stated, an appeal will be deemed frivolous if a reasonable, prudent attorney would not in good faith have brought such an appeal." *First Federal Sav. Bank of Proviso Tp. v. Drovers Nat. Bank of Chicago*, 237 Ill. App. 3d 340, 344 (1992). An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense. Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). We note that plaintiff had an opportunity to respond to defendants' request for sanctions in his reply brief and did so unpersuasively. His reply misstates the trial court's ruling, discussed below, assails defendant's "hubris," muses about defendants' possible use of AI software, and focuses on how plaintiff's 2023 complaint was an attempt to collect attorney fees rather than a referral fee.

¶ 30    Plaintiff's entire appeal is premised on the idea, contrary to reason or common sense, that the 2017 settlement agreement demonstrated the continued existence of an attorney-client relationship. As already discussed, this argument had no basis in the record. Our careful review of the 2017 settlement agreement between plaintiff, defendant, and Niro McAndrews reveals it to be precisely that–an agreement to settle plaintiff's suit–and nothing more. To say that defendants still intended to maintain an attorney-client relationship with plaintiff after his outrageous, suspension-

worthy conduct and after suing them, with no other evidence in the record to the contrary, strains all credulity. Plaintiff asks us to find that two plus two equals five. We reject that invitation.

¶ 31 Plaintiff's appeal is not grounded in fact, and this is hardly plaintiff's only instance of refusing to engage fairly and objectively with the facts of this case. Despite the prescriptions of Rule 341(h)(6), plaintiff's briefing is completely devoid of any details regarding his suspension which was inextricably tied to his conduct toward defendants during the representation for which he now seeks fees. Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Reading plaintiff's brief, one would think that plaintiff's suspension was unrelated to his representation of defendants. Indeed, plaintiff does not even make passing reference to the fact that his suspension, in large part, was the product of his conduct toward defendants. When defendants included a summary of these facts in their own brief, which provided a clearer and more comprehensive picture of the procedural history of this case, plaintiff responded in his reply brief by attacking defendants and bizarrely accusing them of including "irrelevant" information. Plaintiff has also repeatedly misstated the trial court in an apparent attempt to bolster the credibility of his argument. On multiple occasions throughout the briefing, including in his response to the request for sanctions, plaintiff claimed the trial court "hoped" there would be an appeal of this issue. The trial court said no such thing.

¶ 32 Defendants, in their request for sanctions, also pointed out that plaintiff's argument is not supported by any existing law and that plaintiff cannot cite a single case that supports his position. Plaintiff responded in his reply brief by citing the same three irrelevant cases that we referenced above, as well as insisting that Rule 764(h) supports his position. As we have already discussed, interpreting Rule 764(h) to have anything to do with creating a cause of action or restarting the

statute of limitations defies reason, particularly in the context of plaintiff's baseless factual assertions.

¶ 33   We also conclude that plaintiff is not making a good-faith argument for the extension or modification of the law. Good faith would require plaintiff to deal honestly with the facts of this case, and his argument that he continued to have an attorney-client relationship with defendants after 2016 is not dealing with the facts of this case honestly. It is inconceivable that a reasonable, prudent attorney could examine the facts of this case and believe that plaintiff had an ongoing attorney-client relationship as a result of plaintiff suing his former clients and those clients agreeing to settle out of court. And because plaintiff's entire appeal is built around such an easily refutable factual assertion, we conclude that plaintiff's appeal was taken for an improper purpose. Plaintiff's suspension did not fall out of the sky, and the fact that his suspension made the recovery of his referral fee impossible was a problem of his own making. This appeal, too, is a problem of plaintiff's own making as he had ample time after his suspension in 2020 to file suit for fees before the statute of limitations lapsed in February 2021.

¶ 34   In its findings recommending suspension, the ARDC cited generally plaintiff's "relentless vindictiveness," but also referenced his "failure to recognize the wrongfulness of much of his conduct," particularly with respect to his conduct toward defendants. This appeal appears to be more of the same as there is an impressive dissonance between the frivolity of plaintiff's factual assertions and legal argument and his unflinching confidence in his own righteousness. Defendants have asked us to award them reasonable costs and expenses, including reasonable attorney fees incurred from this appeal. We think this is a reasonable request given that plaintiff has dragged

defendants through yet more litigation despite the baselessness of his arguments. However, the record provides us no indication of what those costs and expenses might be.

¶ 35 Accordingly, while we affirm the trial court's judgment, we remand this cause to the trial court for the limited purpose of allowing the trial court to make a determination about the costs, attorney fees, and sanctions to be imposed.

¶ 36                                     III. CONCLUSION

¶ 37 For the above reasons, we affirm the trial court's judgment dismissing plaintiff's complaint for fees with prejudice. We remand to the trial court to permit a determination of the costs, attorney fees, and sanctions to be imposed on plaintiff.

¶ 38 Affirmed; cause remanded.