SECOND DIVISION

November 3, 1998

No. 1-97-3476

LIBERTY MUTUAL INSURANCE COMPANY, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )

)

WESTFIELD INSURANCE COMPANY, ) Honorable

) John K. Madden,

Defendant-Appellant. ) Judge Presiding.

JUSTICE McNULTY delivered the opinion of the court:

This is a declaratory judgment action brought by Liberty Mutual Insurance Company (Liberty) seeking equitable contribution from Westfield Insurance Company (Westfield) based on a settlement Liberty paid on behalf of W.B. Olson, Inc. (Olson).  The trial court entered summary judgment in favor of Liberty and against Westfield for one-half of the defense and settlement costs Liberty incurred, plus prejudgment interest.  Westfield appeals, claiming that: (1) it did not waive its right to require proof of all facts necessary to recovery or to contest the reasonableness of the settlement; (2) its additional insured endorsement did not cover Olson's liability in the underlying suit as a matter of law; and (3) Liberty was not entitled to prejudgment interest.  We  affirm.

Liberty issued a commercial general liability policy to Olson, which provided liability coverage for, among other things, Olson's work as a general contractor at a construction project known as the Dearborn Phase II Project (the project) at 1400 South State Street in Chicago.  The Liberty policy's bodily injury limits were $1 million per occurrence.  The policy was effective from March 31, 1989, to March 31, 1990.  Westfield Insurance Company issued a commercial general liability policy with bodily injury liability limits in the amount of $1 million per occurrence, effective February 1, 1989, to February 1, 1990, to Rivard Brothers, Inc. (Rivard), which provided liability coverage for, among other things, Rivard's work as Olson's subcontractor at the project.  

Sometime prior to October 23, 1989, Olson, as general contractor, entered into a subcontract agreement with Westfield's insured, Rivard Brothers, Inc., for the performance of certain carpentry work at the project.  Olson was named as an additional insured on the Westfield policy by means of an endorsement which provided: 

"WHO IS AN INSURED (Section II) is amended to include as an additional insured the person or organization shown in the Schedule, but only with respect to liability arising out of 'your work' for that insured by or for you."          

The Westfield policy defined "your work" as "work or operations performed by you or on your behalf."

On or about May 4, 1990, William R. Taylor, an employee of Rivard, filed suit against Olson, alleging that he was severely injured on or about October 23, 1989, while employed at the project.  Taylor's claims were based on theories of common law negligence and violations of the Illinois Structural Work Act (740 ILCS 150 (West 1994)).

     Olson tendered the defense and indemnification of the Taylor suit to Liberty, and Liberty provided Olson's defense.  Olson's defense and indemnification were subsequently tendered to Westfield.  Westfield agreed to split equally with Liberty the defense and indemnification of Olson, on the condition that the coverage condition in the additional insured endorsement, that Olson's liability arise out of Rivard's work, apply.  The two insurers agreed that Liberty's in-house lawyers would handle Olson's defense. 

On or about May 27, 1994, five days prior to the scheduled trial date of the Taylor suit, Westfield informed Liberty that it was no longer willing to pay a 
pro rata
 share of the cost of settling the Taylor suit.  Westfield’s decision was based on the fact that it had obtained access to a videotape which indicated that Taylor's injuries were less severe than Taylor claimed.    

On June 2, 1994, the day of trial, at a pretrial conference, the trial court recommended that the case be settled by Olson, the only remaining defendant, for $900,000.  Liberty's attorney proposed to Westfield's attorney that they the settle the case for that amount, with each contributing 50% toward the settlement.  Westfield's attorney refused, on the ground that $900,000 was an excessive amount considering the extent of plaintiff's injuries and in light of the videotape.  

 As an alternative, Liberty's attorney proposed to Westfield's attorney that Westfield take sole responsibility for trying the case and for paying an adverse verdict, subject to the condition that Liberty tender $450,000 to Westfield or agree to pay the first $450,000 of any adverse judgment against Olson.  Westfield's attorney declined this proposal.  Liberty then settled Taylor's lawsuit against Olson for approximately $900,000, without any contribution from Westfield.

On June 17, 1994, Liberty wrote to Westfield and asked it to reimburse Liberty for one-half of the settlement costs.  On August 1, 1994, Liberty wrote to Westfield again requesting Westfield to pay 50% of the settlement and informing Westfield that defense costs were in excess of $100,000 and that Liberty expected payment of 50% of those costs.  On November 13, 1994, Liberty wrote to Westfield again requesting Westfield to pay 50% of the defense costs, which were calculated to be $54,941.82.   

On March 7, 1995, Liberty filed a declaratory judgment action against Westfield seeking equitable contribution for half of the cost of defending and settling the Taylor suit, reimbursement of the settlement, and defense costs.  On June 3, 1996, Liberty filed a motion for summary judgment and for penalties and fees.  Liberty claimed in its motion that Westfield was estopped from contesting the reasonableness of Liberty's settlement, because Westfield had breached its duty to defend Olson.  On September 26, 1996, the trial court granted Liberty's motion, but rejected Liberty's contention that Westfield had breached its duty to defend.  The trial court also found that Westfield's refusal to reimburse defense costs merited sanctions.  On October 18, 1996, Westfield filed a motion to vacate the summary judgment, contending that absent an estoppel, there was no basis for the judgment, because Liberty had not proven the facts necessary to Taylor's recovery or the reasonableness of the settlement.  The trial court granted that motion on January 10, 1997, granting Liberty leave to file a second motion for summary judgment addressing the elements of equitable contribution.  On January 21, 1997, Liberty again moved for summary judgment, contending that Westfield waived its right to contest the reasonableness of the settlement by failing to either settle or try the case.  The trial court granted the motion, finding that  Olson's liability to Taylor arose out of Rivard's work as a matter of law and was therefore covered by Westfield's policy.  The court also held that Westfield waived the right to contest the reasonableness of the settlement.  The trial court entered judgment in favor of Liberty and against Westfield in the amount of $579,370.32, which included prejudgment interest.  To date Westfield has paid its share of defense costs, but not its share of the settlement.

       Westfield first claims on appeal that the trial court erred in finding that Westfield waived the right to contest the reasonableness of the settlement.  The doctrine of equitable contribution permits an insurer that has paid the entire loss to be reimbursed by other insurers that are also liable for the loss.  
Cincinnati Cos. v. West American Insurance Co.
, 287 Ill. App. 3d 505, 679 N.E.2d 91 (1997); 
Royal Globe Insurance Co. v. Aetna Insurance Co.
, 82 Ill. App. 3d 1003, 403 N.E.2d 680 (1980).  The trial court determined that Westfield waived the right to contest the reasonableness of the settlement in this equitable contribution action since Westfield had the opportunity to take over Olson's defense and to challenge Taylor's right to recovery at trial, but did not do so. 

    An implied waiver of a legal right may arise when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it.  
Whalen v. Kmart Corp.
, 166 Ill. App. 3d 339, 519 N.E.2d 991 (1988).  Where there is no dispute as to the material facts and only one reasonable inference can be drawn therefrom, it is a question of law whether the facts proved constitute waiver.  
Wald v. Chicago Shippers Ass'n
, 175 Ill. App. 3d 607, 529 N.E.2d 1138 (1988).  

We agree with the trial court's finding that Westfield impliedly waived its right to contest the settlement.  Westfield claims that the Taylor case should have been tried, rather than settled.  The record reveals that Liberty clearly gave Westfield the opportunity to try the case, and even offered to pay $450,000.  Westfield, however, refused to either settle the case or try the case.  According to Westfield, its refusal to try the case was not inconsistent with any intention other than to waive.  Westfield claims that there was another option to resolve the disagreement between Liberty and Westfield as to the value of the case other than either settling or trying the case.  Westfield claims the dispute could have been resolved through later litigation in an equitable contribution action.  However, there is nothing in the record to indicate the Westfield made such a suggestion on the morning of trial or at any relevant time.  See 
Insurance Co. v. Federal Kemper Insurance Co.
, 291 Ill. App. 3d 384, 683 N.E.2d 947 (1997)(insurer cannot avoid estoppel due to failure to defend insured by later claiming failure to defend was due to conflict of interest, especially when the basis for denying insured defense was never communicated to the insured).  Although Westfield claimed that the settlement amount suggested by the trial court and accepted by Liberty was unreasonable, Westfield never asked to introduce evidence or hold an evidentiary hearing on reasonableness.  We thus find that under the particular facts of this case, where Westfield refused to settle the case, try the case, or present any evidence to challenge the reasonableness of the settlement amount, Westfield's conduct was inconsistent with any other intention but to waive its rights.  

Westfield next claims that the trial court erred in finding that as a matter of law Westfield's additional insured endorsement covers Olson for the loss.  The Westfield policy issued to Taylor's employer, Rivard Brothers, Inc., had an endorsement naming Olson as an additional insured "but only with respect to liability arising out of [Rivard's] work for [Olson] by or for [Rivard]." 

Taylor was an employee of Rivard Brothers, the named insured on the Westfield policy.  Olson entered into a contract with Rivard Brothers for carpentry work on a project on State Street.  Taylor claimed in his complaint that he was working on a scaffold or support erected and placed by Olson, when the support collapsed, causing Taylor to fall and be injured.  Westfield claims that these facts fail to indicate that Olson's liability had anything to do with work performed by Rivard.  

However, our review of the relevant case law indicates that these facts are sufficient to find that Olson's liability for Taylor's injury arose out of Rivard's work.  The phrase "arising out of" is broad and vague and must be liberally construed in favor of the insured; accordingly, "but for" causation, not necessarily proximate cause satisfies this language.  
Maryland Casualty Co. v. Chicago & North Western Transp. Co.
, 126 Ill. App. 3d 150, 466 N.E.2d 1091 (1984).  In 
American States Insurance Co. v. Liberty Mutual Insurance Co.
, 291 Ill. App. 3d. 336, 683 N.E.2d 510 (1997), Turner was the general contractor and Fisher was the subcontractor.  The injured claimant, Navarrete, was a Fisher employee.  Liberty insured Turner, who was an additional insured on Fisher's policy written by American States.  The court considered whether, as a matter of law, Turner's liability arose out of Fisher's work.  American States claimed that some of Turner's liability did not to arise out of Fisher's work.  The court, however, stated:

"American States [says] there may be aspects of the Navarrete suit that involve only Turner's work.  We do not see how.  

*** Navarrete was injured while 'going about the business of his employer [Fisher].'  He was doing an activity in furtherance of the work Turner hired Fisher to do. 

*** 

*** American claims there are a number of ways that Turner could have contributed to the accident by itself without involving 'Fisher's work.'  The accident occurred, however, while [Navarrete] was working at the construction site for Fisher.  We find that 'but for' [Navarrete's] employment by Fisher and Fisher's presence on the jobsite, [Navarrete] would not have been injured."  291 Ill. App. 3d at 341.  

The court therefore determined that the accident arose from Fisher's work for Turner.         

 Similarly, in 
Shell Oil Co, v. AC&S, Inc.
, 271 Ill. App. 3d 898, 649 N.E.2d 946 (1995), the plaintiff was employed by a subcontractor that obtained a commercial general liability policy naming the general contractor as an additional insured.  The additional insured endorsement covered any liability of the additional insured as long as that liability "arose out of" the subcontractor's operations.  Plaintiff was injured while on the general contractor's premises and in furtherance of his employment with the subcontractor.  His injury occurred when he tripped over a pipe while walking on a path at the jobsite.  The court found that plaintiff's injuries arose from the operations of the subcontractor on the general contractor's premises.  The court explained that the injuries would not have occurred "but for" the plaintiff's employment by the subcontractor and the subcontractor's presence on the general contractor's premises.  See also 
Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co.
, 150 Ill. App. 3d 472, 501 N.E.2d 812 (1986)(since the subcontractor was performing operations pursuant to its contract with the general contractor at the time the injuries occurred, liability will arise out of operation performed by the subcontractor for the general contractor, the additional insured).

 Here, Taylor, was an employee of Westfield's insured Rivard, and he was injured while working on the construction project Olson hired Rivard to work on.  As such, Olson's liability to Taylor arises out of Rivard's work as a matter of law.  

 Westfield also claims that the trial court abused its discretion in awarding prejudgment interest on the share of the settlement costs that it found Westfield must pay.  An award of prejudgment interest is within the trial court's discretion and the standard of review on appeal is that such an award will not be disturbed on appeal unless it constituted an abuse of discretion.  
United States Fidelity and Guaranty Co. v. Alliance Syndicate, Inc.
, 286 Ill. App. 3d 417, 676 N.E.2d 278 (1997).  

 The Interest Act prescribes prejudgment interest on "all moneys after they become due on any *** instrument of writing."  815 ILCS 205/2 (West 1996).  An insurance policy is an instrument of writing within the meaning of the Interest Act.  
Ervin v. Sears, Roebuck & Co.
, 127 Ill. App. 3d 982, 469 N.E.2d 243 (1984).  Moreover, the existence of a good-faith defense does not preclude prejudgment interest under the Interest Act.  
Ervin
 127 Ill. App. 3d at 991.  Westfield claims that prejudgment interest cannot be awarded in an action between two insurers for equitable contribution.  Recently, however, in 
New Hampshire Insurance Co. v. Hanover Insurance Co.
, 296 Ill. App. 3d 701, 698 N.E.2d 22 (1998), the court held that prejudgment interest may be awarded in an action by one insurance company against another insurance company.  We thus find that, under the circumstances here, the trial court did not abuse its discretion in awarding prejudgment interest. 

 Accordingly, for the reasons set forth above, the trial court order granting summary judgment in favor of Liberty is affirmed as is the order granting Liberty prejudgment interest.

 Affirmed.   

GORDON, P.J., and COUSINS, J., concur.