In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1781

SUPREME LAUNDRY SERVICE, L.L.C.,

*Plaintiff-Appellant,*

*v.*

HARTFORD CASUALTY INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CV 4475—**James B. Zagel,** *Judge.*

ARGUED OCTOBER 24, 2007—DECIDED APRIL 4, 2008

Before FLAUM, MANION, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Supreme Laundry Service, L.L.C. ("Supreme") leases space in condominium and multi-unit apartment buildings for the purpose of installing and maintaining laundry machines for the residents' use. A dispute between Supreme and its main competitor, Coinmach Corporation ("Coinmach"), led to litigation in which Supreme's insurance provider, Hartford Casualty Insurance Company ("Hartford"), refused to provide a defense. Hartford claims that the relevant provisions of the

policy require that it provide a defense for Supreme only against claims made by natural persons and not corporations. Because the policy is ambiguous as to whether its provisions are limited to only natural persons, we find that Hartford had a duty to defend Supreme against Coinmach's claims. We therefore reverse the judgment of the district court.

## I. BACKGROUND

In June 2000, the Hinsdale Point Condominium Association (the "Association") entered into a lease with Supreme to install and maintain laundry equipment, a service previously provided by its competitor, Coinmach, whose lease was cancelled for failure to pay rent. In 2001, Supreme filed a declaratory judgment action to determine the validity of its lease with the Association, and Coinmach filed a three count counterclaim. Coinmach's first count sought a declaration that its eviction from the Association's laundry rooms was unlawful and that it was entitled to an order directing Supreme to vacate the laundry rooms. Its second count accused Supreme of "willful, wanton and malicious" trespass resulting in lost profits exceeding $90,000. Coinmach's third count alleged that Supreme's employees had unlawfully moved, removed and/or used Coinmach's property in the Association's laundry rooms.

In April 2002, Supreme forwarded the counterclaim to Hartford, requesting a defense. A few weeks later, Hartford denied coverage, finding that the counterclaim allegations did not fall within the confines of the "personal and advertising injury" provision of Supreme's Commercial General Liability Policy ("CGL policy"). In September 2004, Coinmach filed an amended counterclaim, which Supreme also forwarded to Hartford with a renewed request to

defend. Hartford again rejected the request, this time because Supreme was not the owner, landlord, or lessor of the laundry rooms and that the alleged acts of trespass fell outside of the scope of the policy.

Supreme then filed this suit against Hartford, alleging that Coinmach's counterclaim fell within the terms of Supreme's CGL policy. Hartford argues that Coinmach is a "corporation" and not a "natural person"; therefore, the counterclaim falls outside the purview of the "personal and advertising injury" provision of the policy. The "personal and advertising injury" provision includes the following language:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

The policy defines "personal and advertising injury" as:

> [I]njury, including consequential 'bodily injury', arising out of one or more of the following of-fenses:
>
> > c. The wrongful eviction from, wrongful entry into, or invasion of the right of pri-vate occupancy of a room, dwelling, or premises that a person occupies, commit-ted by or on behalf of its owner, landlord or lessor . . .

Supreme also has a second policy with Hartford, the Umbrella Policy, which was issued contemporaneously with the CGL policy and provides coverage for any sums that the insured must pay for personal or advertising injury

that are in excess of the coverage provided by the CGL policy. The Umbrella policy's "personal injury" provision contains similar language to that in the CGL policy. The district court granted Hartford's Rule 12(c) motion for judgment on the pleadings, finding that Hartford had no duty to defend Supreme because the term "person" as it is used in the policies applies to natural persons only and not to corporations.

## II.  ANALYSIS

### A.  Hartford had a duty to defend Supreme in the underlying lawsuit because the insurance policy is ambiguous.

Under Federal Rule of Civil Procedure 12(c), a party can move for judgment on the pleadings after the filing of the complaint and answer. This court reviews *de novo* the district court's ruling on a Rule 12(c) motion, *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007), and will grant the motion "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Id*.

Supreme argues on appeal that Hartford breached the insurance contract by denying coverage. Neither of Supreme's policies contains choice of law provisions, but Illinois law applies since the policies were delivered in Illinois to Supreme, an Illinois corporation whose operations are located within the state. *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995) (outlining the Illinois choice of law factors). Under Illinois law, to determine if the insurer has a duty to defend its insured, "the court must look to the allegations in the

underlying complaint and compare these allegations to the relevant provisions of the insurance policy." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* 607 N.E.2d 1204, 1212 (Ill. 1992). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Id.* (*citing Weiss v. Bituminous Casualty Corp.,* 319 N.E.2d 491, 494 (Ill. 1974)). Furthermore, "[r]efusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage." *Id.; see also Old Republic Ins. Co. v. Chuhak & Tecson,* 84 F.3d 998, 1001 (7th Cir. 1996) (applying Illinois law, which states that the duty to defend is broad and the insurance company must defend if the underlying suit is arguably covered by the policy).

Hartford takes the position that it had no duty to defend Supreme because the relevant policy provisions speak in terms of providing a defense against claims made by "persons"—a term which it argues cannot apply to Coinmach, which is a corporation. Hartford reasons that the use of the word "organization" in conjunction with "person" supports this reading of the CGL policy because, it maintains, when the word "person" is used in isolation from the word "organization" in the policy, "person" consistently refers to natural persons. It contends that to find otherwise would render use of the word "organization" mere surplusage.[1]

---

[1] Hartford points out, for example, that the "Limits of Insurance" section on page eight of the CGL policy provides that the limits shown on the declarations page apply irrespective of the number of "[p]ersons or organizations making claims or bringing 'suits.'" In subparagraph 2.b. of the "Who Is An

(continued...)

In support of this position, Hartford relies on *Mirapad, L.L.C. v. California Insurance Guarantee Ass'n.,* 34 Cal Rptr. 3d 136 (Ct. App. 2005). In *Mirapad*, the court found that the term "person" did not apply to organizations in the context of a wrongful eviction provision of a Commercial General Liability policy where the term "person," as used in other places in the policy, clearly referred to a natural person. *Id.* at 138. The district court here agreed, reasoning that since the terms "person" and "organization" are often coupled together in the policy, when the policies' drafters wanted to refer to both persons and organizations, they would list both terms and not use the term "person" to encompass both.

Illinois law requires, however, that insurers defend a claim if it *potentially* falls within the policy's coverage, *Outboard Marine Corp.,* 607 N.E.2d at 1212, and this rule demands a result contrary from that found by the district court. The term "person" is not defined by the policy, and Illinois courts have held that if a term in a contract is undefined, a court should afford the term its "plain, ordinary and popular meaning . . . [as] derived from the term's dictionary definition." *Id.* at 1215. Webster's Dictionary defines "person" as "one (as a human being, a partnership, or a corporation) that is recognized by law as the subject of rights and duties." *See also* Oxford English Dictionary 597 (2nd ed. 1989) (defining "person" as "[a] human being (natural person) or body corporate or corporation (artificial person), having rights or duties recognized

---

(…continued)
Insured" provision on page seven of the policy, the policy provides that "[a]ny person (other than your 'employee'), or any organization while acting as your real estate manager," is included as an insured.

by the law"); Black's Law Dictionary 1162 (8th ed. 2004) (defining "person" as both a human being and an entity). Thus, the ordinary meaning of the word "person" can refer to a corporation. In this case, the "personal and advertising injury" provision can apply to both natural persons and corporations which, at the very least, means that the use of "person" in the policy is ambiguous. *William Blair & Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 769 (Ill. App. Ct. 2005) ("A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning."). Ambiguities are resolved against the drafter of the policy. *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 828 (7th Cir. 1992) ("[a]ll doubts and ambiguities must be resolved in favor of the insured").

It is true that there are certain provisions in the policy in which "person" must refer to a natural person. For example, the CGL policy's definition for "bodily injury"[2] would preclude the term "person" from universally applying to both natural persons and corporations. A corporation cannot suffer bodily injury, or as another example, become intoxicated which would prohibit coverage under the liquor liability exclusion. This limitation is not so evident in the "personal and advertising injury" provision of the contract. Similar to a natural person, a corporation can be wrongfully evicted from premises. Given that neither "person" nor "organization" is defined by the policies, we will not read "person" in this CGL policy to refer to simply natural persons when it can plausibly apply to a corporate entity, especially where the drafters never expressed any

---

[2] The CGL policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

intent that usage of the term was meant only to refer to natural persons.

The Umbrella policy provides even more support for our conclusion that the use of the word "person" is ambiguous.[3] The Umbrella policy lists six instances that can give rise to a "personal injury" covered by the policy; two are relevant to our analysis. The provision reads, in part:

> Personal injury, means injury . . . arising out of one or more of the following offenses committed during the 'policy period' in the conduct of your business:
>
> 3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that *a person* occupies by or on behalf of his or her owner, landlord or lessor;
>
> . . .

---

[3] Hartford argues that the meaning of the word "person" cannot be determined by reference to the Umbrella policy; however, since the meaning of the word is not clear from the four corners of the CGL policy, we can look to the Umbrella policy to provide insight because it was drafted at the same time as the CGL policy. *See Wald v. Chicago Shippers Ass'n*, 529 N.E.2d 1138, 1146 (Ill. App. Ct. 1988) ("Where there is an ambiguity arising from the terms of a contract, the meaning may be derived from extrinsic facts surrounding formation."); *William Blair & Co.,* 830 N.E.2d at 773 ("courts may refer to extrinsic evidence to determine that words, seemingly unambiguous within the four corners of a contract, are, nevertheless, blatantly ambiguous within the broader context of the parties' dealings").

>    6.   Discrimination or humilation not inten-
>         tionally committed by or at the direc-
>         tion of the 'insured' . . . but only with
>         repect to injury to the feelings or repu-
>         tation of *a natural person*.

(Emphases added).

The use of the term "person" in subpart 3 and the later use of the distinct term "natural person" in subpart 6 undermines Hartford's argument that "person" only applies to natural persons. Hartford utilized the term "natural person" in subpart 6 of the Umbrella policy. It chose not to use that term in subpart 3 of the same provision. However, subpart 3 contains language nearly identical to that at issue in the CGL policy, which Hartford now claims is limited to natural persons. The use of the word "natural person" in the Umbrella policy's "personal injury" provision makes it further unclear to us that "person" as it is used in the CGL policy's "personal and advertising injury" provision was intended only to apply to natural persons.

### B.   Hartford is estopped from raising a policy defense to coverage.

Hartford makes one last argument to avoid a finding that it breached its duty to defend Supreme. Hartford argues that even if Coinmach's allegations fall within the CGL policy, Exclusion 7 of the policy would preclude coverage. Exclusion 7 provides that:

> This insurance does not apply to:
>
>    1.   "Personal and advertising injury:"

(7) Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement".

Hartford argues that this provision precludes coverage on the basis of the Association's alleged breach of its lease with Coinmach, which led to the underlying lawsuit and counterclaim for which Supreme now seeks defense. However, the general principle of contractual estoppel is applicable to the instant case. Under this theory, "an insurer that believes it has no duty to defend a tendered claim can avoid liability if it either: 1) defends under a reservation of rights or 2) seeks a declaratory judgment that it has no obligation to defend. If an insurer simply declines to defend and is later found to have denied wrongfully coverage, the insurer is estopped from raising a policy defense to coverage." *Ill. Sch. Dist. Agency v. Pac. Ins. Co.*, 471 F.3d 714, 720 (7th Cir. 2006). Hartford declined to defend Supreme in the underlying action, and Supreme, not Hartford, instituted the current declaratory judgment action regarding coverage. Thus, Hartford is estopped from raising a policy defense to coverage.

Even if we were to find that Hartford is not estopped from raising a policy defense, Hartford would have us read the "arising out of any breach of contract" language of Exclusion 7 very broadly, to apply even to contracts to which the insured is not party but has somehow benefitted from because of the alleged breach. The cases relied on by Hartford for a broad reading of this language, *West American Insurance Co. v. Bedwell*, 715 N.E.2d 759 (Ill. App. Ct. 1999) and *Liberty Mutual Insurance Co. v. Westfield*, 703 N.E.2d 439 (Ill. App. Ct. 1998), are inapposite. There, the courts read the "arising out of" language broadly for

purposes of *affording* coverage, consistent with the general rule that "underlying complaints and the insurance policies must be liberally construed in favor of the insured", *Travelers Insurance Cos.,* 974 F.2d at 828, and neither case involved an "arising out of breach of contract" exclusion.

Notably, Coinmach's counterclaim, for which Supreme seeks defense, is not for breach of contract. It therefore seems somewhat odd to read the contract as restricting the insured's coverage where the insured is not a party to the contract that has allegedly been breached and where the counterclaim for which the insured seeks coverage is not for breach of contract. However, because Coinmach's counterclaim for trespass against Supreme depends on the underlying validity of its contract with the Association, and Supreme's actions could be read as somehow inducing a breach of this contract, Exclusion 7 is, at the very least, ambiguous, which leaves Hartford in the same position of having a duty to defend its insured. *Old Republic,* 84 F.3d at 1003 ("All that is necessary to trigger the duty to defend is that the claim be within the arguable scope of the insurance policy.").

For these reasons, we find that Hartford had a duty to defend Supreme against Coinmach's counterclaim. This duty to defend arose "as soon as damages [were] sought." *General Agents Ins. Co. v. Midwest Sporting Goods Co.,* 828 N.E.2d 1092, 1097 (Ill. 2005). Therefore, Hartford's duty to defend Supreme arose as soon as Supreme tendered Coinmach's counterclaim to the company on March 15, 2002, and Hartford has to reimburse Supreme for its expenses to date. *A. Kush & Assocs. v. American States Ins. Co.,* 927 F.2d 929, 934 (7th Cir. 1991) ("when an insurer has a duty to defend it 'must reimburse [the insured] for the

reasonable fees and costs incurred in that action to date' ") (citation omitted).

### III. CONCLUSION

Accordingly, we REVERSE the judgment of the district court and REMAND this case for proceedings consistent with this opinion.