2023 IL App (1st) 210821-U

No. 1- 21-0821

Order filed February 10, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois |
| Plaintiff-Appellee, | ) ) | No. 2019 CH 1639 |
| v. | ) | The Honorable |
| EXP US SERVICES, | ) ) ) | Allen P. Walker Judge Presiding |
| Defendant-Appellant. | ) | |

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

*Held*: The grant of summary judgment in favor of insurer is affirmed where insurer was an excess insurer that did not owe a duty to defend until all primary coverage was exhausted.

¶ 1     Plaintiff American Guarantee and Liability Insurance Company (AGLIC) filed a complaint for declaratory judgment against Defendant EXP US-Services (EXP). AGLIC and EXP filed cross-motions for summary judgment (735 ILCS 5/2-1005 (West 2018)). The circuit court granted

AGLIC's motion for summary judgment and denied EXP's motion to reconsider. EXP appeals arguing the circuit court erred in granting summary judgment in favor of AGLIC. For the following reasons we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The Illinois Department of Transportation engaged F.H. Paschen, S.N. Nielsen & Associates, LLC (Paschen) as a general contractor and EXP as an engineering firm for construction work on the Algonquin Bypass Project in Algonquin, Illinois. Paschen entered into a subcontract with Arrow Road Construction Company (Arrow Road). The subcontract between Paschen and Arrow Road provided in part:

"Insurance to be Provided * * *

2) Commercial General Liability Insurance

Commercial General Liability Insurance with a single limit of not less than $2,000,000.00 per occurrence and $2,000,000 in the aggregate. Such insurance shall include a designated construction project general aggregate limit endorsement. Such insurance shall provide coverage for bodily injury, personal injury, property damage, premises and operations, explosion, collapse and underground hazards, products and completed operations, contractual liability, independent contractors, broad form property damage (including products and completed operations). F.H. Paschen, S.N. Nielsen & Associates LLC and its related entities, The Illinois Department of Transportation, EXP. shall be included as additional insured, with coverage no more restrictive than Insurance Services Office (ISO) Form Number CG 20 10 10 01 and CG 20 37 10 01. Coverage

provided the additional insured shall be on a primary, non-contributory basis for any liability arising directly or indirectly from the work of the Subcontractor. If subcontractor has work within 50 feet of the railroad, subcontractor shall obtain endorsement CG 24 17 10 01 Contractual Liability Railroads, to obtain coverage under its General Liability Policy for work within 50 feet of railroad tracks. The insurance carrier shall provide a waiver of subrogation for all above listed additional insureds. Products/Completed Operations shall extend for two years after Final Completion. ***

4) Professional Liability

When any architects, engineers or consulting firms perform work in connection with the subcontract, Professional Liability Insurance shall be maintained with limits of $5,000,000. The policy shall have an extended reporting period of two years. When policies are renewed or replaced, the policy retroactive date must coincide with or precede start of work pursuant to the contract. ***

8) Umbrella Liability Insurance

This coverage is to follow the form of all primary coverage requirements as outlined above and shall be provided in an amount not less than ($5,000,000) each occurrence and annual aggregate on a per project basis excess of the underlying policy limits. Subcontractor must have its Umbrella/Excess insurance endorsed to include as an additional insured F.H. Paschen, S.N. Nielsen & Associates LLC and its related entities, The Illinois Department of Transportation, EXP."

¶ 4     Arrow Road was required to maintain commercial general liability (CGL) insurance in the amount of $2 million per occurrence and in the aggregate for Paschen, IDOT, and EXP as additional insureds. Arrow Road procured the primary CGL insurance policy from BITCO General Insurance Corporation (BITCO), effective from March 1, 2014, to March 1, 2015. Arrow Road was also required to maintain umbrella liability insurance, with a minimum of $5,000,000 of coverage, to follow the form of all primary coverage requirements. AGLIC issued the $5,000,000 commercial umbrella policy to Arrow Road for the effective period of March 31, 2014 to March 1, 2015.

¶ 5     On June 3, 2014, Paul Sitz was injured when his motorcycle struck a raised manhole in the Algonquin Bypass construction zone. Sitz subsequently filed an action against Paschen, Arrow Road, and EXP, among other defendants. In the first amended complaint, Sitz alleged, *inter alia* negligence on the part of the named defendants. Arrow Road settled with Sitz for $225,000.

¶ 6     EXP was the insured on a CGL policy issued by XL Catlin (Catlin). EXP sought coverage under the policy, but Catlin denied coverage based on a professional services exclusion. Additionally, EXP had a claims-made professional liability insurance policy issued by "Lloyd's Syndicate - Beazley Furlonge Group (Syndicate AFB623-2623)" (Beazley). Beazley did not dispute coverage relating to the claims made against EXP in the Sitz lawsuit.

¶ 7     EXP contended that it was an additional insured under the BITCO policy because of an endorsement entitled "Transportation Contractors Extended Liability Coverage," that allowed additional insureds to qualify under the policy if Arrow Road was required to declare the entity as an additional insured. BITCO disputed EXP's coverage under the policy and initiated a declaratory action regarding its obligation to defend or indemnify EXP and Paschen. The issue was later

resolved in a settlement. *Bitco General Ins. Corp. v. Exp Us Services, Inc., No.* 2016 CH 15119, 2017 (Ill.Cir.Ct. Oct. 24, 2017). As a result of the settlement, BITCO paid $125,000 to EXP for the Sitz settlement.

¶ 8    EXP also sought coverage from the AGLIC policy because the AGLIC policy identified the BITCO policy as underlying insurance in an endorsement. EXP claimed that, because it was an insured on the BITCO policy, it also qualified as an insured on the AGLIC policy. EXP sent multiple letters to AGLIC seeking indemnification and defense in the Sitz lawsuit prior to the settlement with Sitz. After the settlement with Sitz and BITCO, EXP sought the remaining $2.45 million from AGLIC. AGLIC denied coverage for the Sitz lawsuit on October 11, 2018.

¶ 9    On February 7, 2019, AGLIC filed a complaint for declaratory judgment against EXP and sought a declaration that AGLIC did not owe EXP any amount in connection with the Sitz action. AGLIC argued (1) there was not a valid assignment from Beazley to EXP regarding a right to recovery; (2) the professional services exclusion in the AGLIC umbrella policy negates any coverage EXP may claim; (3) the settlement payment made by Beazley was not "caused, in whole or in part," by Arrow Road's conduct; and (4) the AGLIC umbrella policy is excess to the Beazley policy. EXP denied all material allegations. AGLIC filed a motion for summary judgment, and EXP filed a cross motion for summary judgment.

¶ 10    On March 2, 2021, the circuit court granted AGLIC's motion for summary judgment and denied EXP's cross-motion. The circuit court found that the AGLIC policy was excess to the Beazley policy, and while the court found that EXP's liability could have been caused, in whole or in part, by Arrow Road's conduct, the professional services exclusion in the AGLIC policy negates any coverage for EXP.

¶ 11     Subsequently, the circuit court denied EXP's motion to reconsider the grant of summary judgment in favor of AGLIC. The court declined to consider EXP's argument that the AGLIC policy was required to pay $1 million because the Arrow Road's CGL policy did not meet the requisite $2 million limit. The court reasoned that EXP failed to assert the argument earlier in the proceedings, despite the information being available to EXP.

¶ 12     EXP now appeals.

¶ 13                                      II. ANALYSIS

¶ 14     On appeal, EXP argues that the circuit court erred by (1) finding AGLIC's umbrella insurance policy provides only excess insurance coverage and was excess to EXP's Beazley insurance policy; (2) finding the professional services exclusion in AGLIC's policy excluded coverage for EXP despite allegations in the underlying Sitz lawsuit alleging EXP was liable for non-professional services; and (3) denying EXP's cross-motion for summary judgment. EXP also contends that $1 million of the AGLIC policy must be treated as primary insurance coverage because Arrow Road did not procure the $2 million CGL insurance required by the contract with Paschen. AGLIC responds that the AGLIC policy does not provide indemnity coverage for Beazley's settlement payment because the payment was made to resolve a professional liability claim against EXP. Given that the AGLIC policy contains professional services exclusions, coverage for the payment is negated. AGLIC argues that even if some portion of the settlement payment was conceivably covered under the AGLIC policy, the AGLIC policy would be excess insurance to the Beazley policy for purposes and amounts paid on behalf of EXP.

¶ 15     "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way

of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill.2d 384, 391 (1993). Here, the parties filed cross-motions for summary judgment. The filing of cross-motions for summary judgment constitutes an implicit agreement between the parties that there are no genuine issues of material fact and only a question of law is presented to the court. *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 13, 160 N.E.3d 929. Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, viewed in a light most favorable to the nonmoving party, reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020); *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284, 769 N.E.2d 18 (2002). We review the grant of summary judgment *de novo. Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co*., 227 Ill. 2d 102, 106 (2007).

¶ 16    "Contracts of insurance are subject to the same rules of construction applicable to other types of contracts." *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 370 (1988). While construing an insurance policy, this court's primary function is to ascertain and enforce the intentions of the parties as expressed in the agreement. *De Los Reyes v. Travelers Insurance Cos.*, 135 Ill. 2d 353, 358 (1990). "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purpose of the entire contract." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993).

¶ 17    When the terms of an insurance policy are clear and unambiguous, they are given their plain and ordinary meaning. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997).

If the terms in a policy are susceptible to multiple meanings, the terms are considered ambiguous and will be construed strictly against the insurer. *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 31. "Where competing reasonable interpretations of an insurance contract exist, a court is not permitted to choose which interpretation it will follow; rather, in such circumstances, the court must construe the insurance contract in favor of the insured and against the insurer that drafted the contract." *Id.*

¶ 18    EXP specifically claims the circuit court erred in finding that the AGLIC policy did not apply until EXP's Beazley policy limit was exhausted. EXP argues that the minimum insurance coverage requirement in the contract between Arrow Road and Paschen, along with AGLIC's and BITCO's policy terms, leads to a finding that Beazley's policy is excess to AGLIC's policy. Furthermore, EXP argues that AGLIC's policy should apply regardless of the professional services exclusion because the underlying complaint was not limited to allegations of professional negligence.

¶ 19                                A. Waiver

¶ 20    As a preliminary matter, we address AGLIC's claim that EXP waived any recovery claim as Beazley's assignee. AGLIC argues recovery was waived on two grounds. First, although Arrow Road's BITCO policy was required to provide primary insurance coverage of $2 million, it provided for only $1 million of coverage. EXP failed to assert, in prior response and cross motion to AGLIC's motion for summary judgment, that the AGLIC policy should cover the additional $1 million in primary coverage not included in the BITCO policy. EXP argues that it cited the subcontract in its motion for summary judgment to claim that the AGLIC policy is primary because $1 million of the AGLIC policy will satisfy the CGL insurance required by the subcontract.

However, the record shows that EXP did not argue Arrow Road failed to procure the requisite $2 million CGL coverage until EXP filed its motion to reconsider the circuit court's summary judgment ruling. The law is clear that issues cannot be raised for the first time before the circuit court in a motion to reconsider, and issues raised for the first time in a motion to reconsider cannot be raised on appeal. *American Chartered Bank v. USMDS, Inc.*, 2013 IL App (3d) 120397, ¶ 13, 987 N.E.2d 818.

¶ 21　Lastly, AGLIC argues that because Beazley settled the claims against EXP without contending that other carriers should have contributed to the settlement, Beazley waived recovery. The failure of a paying insurer to reserve its rights against a nonpaying insurer may constitute a waiver of the right to equitable remedies. *Home Ins. Co. v. Cincinnati Ins. Co*., 213 Ill. 2d 307, 326–27 (2004). Waiver can be expressed or implied, arising from acts, words, conduct, or knowledge of the insurer. *Id.* at 326 An implied waiver arises when conduct of the insurer is inconsistent with any intention other than to waive it. *Liberty Mutual Insurance Co. v. Westfield Insurance Co.*, 301 Ill. App. 3d 49, 53, 703 N.E.2d 439 (1998). In its reply brief, EXP argues that Beazley did not waive any recovery claim against AGLIC because EXP "is not seeking equitable remedies." The basis of EXP's argument is that EXP has demonstrated the AGLIC policy is primary to the Beazley policy. EXP further argues that Beazley assigned its rights to EXP after the settlement was paid, and there was no waiver. However, prior to assigning their rights to EXP one year after settling the Sitz complaint, Beazley had not sent a reservation of rights letter in connection with the Sitz complaint. Beazley settled the underlying case without alleging other insurers were required to contribute. Beazley's failure to reserve its rights against AGLIC could constitute waiver and bar recovery for EXP as Beazley's assignee.

¶ 22    Although, a party's failure to raise an issue or argument results in waiver or forfeiture of that issue or argument, waiver is a limitation on the parties, not the court. *Cent. Illinois Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 152 (2004). Here, we choose to address the issues and arguments raised on appeal in the interest of preserving a sound and uniform body of precedent. *Id.*

¶ 23                                    B. Primary and Excess Coverage

¶ 24    We note the difference between a "primary" coverage insurance policy and an "excess" coverage insurance policy. Primary insurance coverage is coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of an event that gives rise to liability. *Certain Underwriters at Lloyd's, London v. Cent. Mut. Ins. Co.*, 2014 IL App (1st) 133145, ¶ 2. Excess insurance coverage only attaches after the predetermined primary amount has been exhausted, and it provides a secondary level of coverage designed to protect the insured in situations where a judgment or settlement exceeds the primary policy limit of liability. *Kajima*, 227 Ill. 2d at 114 citing *Roberts v. Northland Insurance Co.,* 185 Ill.2d 262, 275 (1998). "True" excess coverage also known as "following form" or "specific" excess coverage, is purchased by the insured in separate contracts that are written by design. *Id* at 115. An umbrella insurance policy is a form of excess liability insurance coverage, and it may offer broader coverage than the underlying primary carrier in some circumstances *Id*.  "Other insurance" provisions attempt to render a policy that otherwise would be considered "primary" as "excess," usually with statements declaring the insured's coverage to be excess over any other valid and collectible insurance the insured has obtained." (Internal quotation marks omitted) *Capitol Constr. Sols., Inc. v. Selective Ins. Co. of S.C.*, 2022 IL App (1st) 200808-U, ¶ 22.

¶ 25    If an insured has more than one primary insurance carrier, Illinois law grants the insured the right to "tender defense of an action to one insurer alone," also known as the targeted tender rule. *John Burns Construction Co. v. Indiana Insurance Co.*, 189 Ill. 2d 570, 578 (2000). The targeted tender rule allows for an insured with multiple primary policies to choose one of the carriers to defend and indemnify the insured against any claim. *Kajima*, 227 Ill. 2d at 107. Despite the targeted tender rule only applying to primary coverage, we again note that "other insurance" provisions attempt to render coverage that would otherwise be considered "primary" as "excess." *River Valley I, LLC v. Central Insurance Companies*, 396 Ill. App. 3d 480, 487 (2009).

> "Other insurance clauses came about in response to the targeted tender doctrine. [Citation.] The targeted tender doctrine allows an insured who is covered by multiple and concurrent primary insurance policies to select, or target, which insurer he wants to defend and indemnify him regarding a specific claim. The insured essentially can choose which insurer among his several co-insurers will participate in the claim against him; he can elect one insurer over another, or, even deactivate coverage with an insurer he previously selected in order to invoke exclusive coverage with another. This allows an insured who has paid for multiple forms of coverage to protect his interests, namely, keeping future premiums low, optimizing loss history and preventing policy cancellation among the insurers he chooses."
>
> In an effort to override the right of the insured to choose among co-insurers, insurers developed "other insurance" excess provisions in their policies. These provisions attempt to render otherwise primary insurance as excess over any other collectible insurance, most often with statements in the policy that declare the insurer's coverage to be excess over any other valid and collectible insurance available to the insured. In such instances, the other

insurance excess provision requires the insured to exhaust the policy limits of the other co-insurers before being able to trigger a defense and indemnification duty in that insurer. *Id.*

¶ 26 Here, EXP argues that AGLIC's other insurance provision acted as a primary policy when Arrow Road's agreement with Paschen required $2 million in CGL coverage, and the BITCO policy accounted for only $1 million of the CGL coverage. EXP contends Coverage A insured damages in excess of the BITCO policy and the Other Insurance Provision states the AGLIC is the primary policy. In response, AGLIC argues that EXP's recovery is barred by the doctrine of horizontal exhaustion, neither AGLIC's "other insurance" provision nor the Arrow Road subcontract establish that AGLIC is responsible for primary coverage, and the Beazley policy is a primary policy that attempts to become an excess policy by including an "other insurance" provision.

¶ 27 To support their argument, AGLIC cites *North River Ins. Co. v. Grinnell Mut. Reinsurance Co.*, 369 Ill. App. 3d 563 (1st Dist. 2006). In *North River*, a subcontractor listed as an additional insured, brought an action claiming the named insured was obligated to contribute to the settlement because the subcontract required the named insurer to provide CGL coverage that was primary and umbrella coverage for the additional insured. *Id* at 566-568. The additional insured argued that the umbrella coverage was meant to provide coverage that was primary and dropped below the additional insured's own CGL policy. The court held that nothing in the subcontractor agreement could be construed as requiring the excess coverage to be exhausted before the additional insured's CGL coverage. *Id* at 570.

¶ 28 Similar to the additional insured in *North River*, EXP has failed to demonstrate where the subcontract indicates the umbrella coverage was required to drop down below the primary policies

maintained by additional insureds. AGLIC's excess policy is entitled "Coverage A - Excess Follow Form Liability Insurance." The policy provides:

"Under Coverage A, we will pay on behalf of the insured, those damages covered by this insurance in excess of the total applicable limits of underlying insurance. With respect to Coverage A, this policy includes:

1. The terms and conditions of underlying insurance to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph 2 below; and

2. The terms and conditions that apply to Coverage A of this policy. Notwithstanding anything to the contrary contained above, if underlying insurance does not apply to such damages, for reasons other than exhaustion of applicable limits of insurance by payment of loss, then Coverage A does not apply to such damages." (C 41)

¶ 29 AGLIC's other insurance provision states:

"If other insurance applies to damages that are also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply:

a. If the other insurance is written to be excess of this policy; or

b. With respect to Coverage A only, if the named insured has agreed in a written contract to carry insurance to apply prior to and be non-contributory with that of another person or organization's

- 13 -

insurance, but only as respect to damages arising out of the insured operations or work on behalf of the named insured performed under such written contract. The limits available to the other person or organization will be the lesser of the policy limits or the minimum limits required by such written contract. In that case, other insurance of that person or organization will apply as excess and not contribute prior to the insurance afforded by this policy. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance."

¶ 30 "An examination of the premiums generally charged for umbrella coverage * * * reflects an intent that umbrella policies serve a different function. [Citation] [E]xcess premiums are lower because excess coverage is, by its very nature, not supposed to be triggered until the underlying policy has been exhausted up to its limits. [Citation.]" *Kajima* 227 Ill. 2d 102, 116 (2007). Arrow Road maintained a CGL policy with BITCO and an umbrella policy with AGLIC. The subcontract required that the CGL coverage have limits of $2 million and umbrella coverage with limits of $5 million. Under *Kajima,* there is a presumption that the umbrella policy is true excess. *Id.*

¶ 31 Furthermore, the BITCO policy stated that "coverage provided to the additional insured shall be on a primary, non-contributory basis," but the AGLIC policy did not have such a provision. EXP is asking this court to find the "other insurance" provision in the AGLIC policy to be evidence that AGLIC was required to provide primary coverage, but we find the provisions in the Beazley policy more significant. Beazley's policy contains a provision titled "Defense, Settlement, And Investigation of Claims." The provision states that Beazley has "the right and the duty to defend

*** any claim against the insured seeking damages which are payable under the terms of this policy." Beazley has an "other insurance" provision that states:

"This Insurance shall apply in excess of:

A. any other valid and collectible insurance available to any Insured, including, but not limited to, any project specific professional liability and/or contractors pollution liability insurance; and

B. any self insured retention or deductible portion thereof

unless such other insurance is written only as specific excess insurance over the

Limit of Liability of this Policy".

¶ 32    We find this court's analysis in *Capitol Constr. Sols., Inc. v. Selective Ins. Co. of S.C.*, 2022 IL App (1st) 200808-U, instructive. In *Capitol,* a contractor sought defense from a subcontractor's insurer after a workplace injury. *Id* ¶6-11. The insurer refused to tender a defense, and subsequently another subcontractor's insurer accepted defense on the contractor's behalf. *Id* ¶11-12. The contractor filed suit seeking an order declaring the initial subcontractor's insurer breached its duty to defend and indemnify the contractor. *Id* ¶13. The circuit court entered an order granting summary judgment in favor of the subcontractor's insurer. *Id* ¶14. On appeal, this court held that the targeted tender rule did not allow the contractor to tender its defense to an insurer that only provided excess coverage. The court analyzed the subcontract at issue and found that the subcontract only required the subcontractor's insurer to provide excess coverage. *Id* ¶37.

¶ 33    Like the subcontract in *Capitol*, the subcontract here required AGLIC to provide umbrella liability insurance, and the language in the subcontract does not require the umbrella coverage to serve as primary insurance. Instead, the subcontract stated the umbrella coverage will follow the

form of the primary coverage and "shall be *** excess of the underlying policy limits." Following Illinois case law, we find that the AGLIC policy was "true" excess coverage and was not required to provide primary insurance coverage based on either Arrow Road's failure to procure the requisite $2 million CGL coverage or Beasley's settlement of claims against EXP.

¶ 34    Having determined that the AGLIC policy was a "true" excess insurance policy providing no coverage until all primary policies are exhausted, we do not need to address EXP's argument that the circuit court erred in finding the professional services exclusion negated coverage for EXP.

¶ 35                                    III. CONCLUSION

¶ 36    For the foregoing reasons, the judgment of the circuit court granting AGLIC's motion for summary judgment and denying EXP's cross motion for summary judgment is affirmed.

¶ 37    Affirmed.